Merrimack, }
Nov. 1, 1904. }

73 72
s74 56
s74 57

## NEW LONDON *v.* DAVIS *&* a.

Where a private individual offers to bear the expense constructing a new highway to take the place of an old one, a vote of a wn-meeting to discontinue the latter is not void on the ground of the iters' interest in the subject-matter.

A vote of a town discontinuing a highway is not invalid because it is not to take effect until the substitute therefor is completed, nor because it contains a proviso that the new highway is to be constructed without expense to the town.

Immaterial irregularities are not sufficient to invalidate a highway discontinuance which is otherwise legal.

Where the consent of the court is essential to give effect to the discontinuance of a highway by a town, the selectmen have authority to maintain a petition for that purpose.

PETITION, for the consent of the court to the discontinuance of a highway, filed September 12, 1903. Facts agreed. The defendants' motion to dismiss was transferred without a ruling from the October term, 1903, of the superior court by *Young*, J.

The petition is as follows: "Respectfully represents the town of New London, . . . that on the sixth day of September, 1902, an article in the warrant for the town-meeting having been duly inserted for that purpose, said town voted to discontinue the highway in said town leading from the county road, so called, to

the schoolhouse on the corner of the highways leading from New London to Soo-Nipi Park and George's Mills.  Said highway was not laid out by the selectmen of said town, but became a highway by prescription.  Said highway is no longer needed for the accommodation of the public, a new highway having been laid out and built in its place.  Wherefore said town requests said court to consent to the discontinuance of the same."

The warrant for a special town-meeting, duly called for September 6, 1902, contained the following articles:

"1st.  To see if the town will vote to discontinue the highway leading from the county road, so called, to the schoolhouse on the corner of the highways leading from New London to Soo-Nipi Park and George's Mills, provided Mrs. Jane A. Tracy will, at her own expense and without any expense whatever to the town of New London, build a highway to take the place thereof.  Said highway to be built at least three rods wide, and to the acceptance of and in accordance with specifications made by said selectmen for the building of said road.

" 2d.  To see if the town will vote to instruct the selectmen to lay out and build a new highway, beginning at a stake and stones on the east side of the highway leading from Newbury to New London (on the county road, so called), said stake and stones being eighty-five feet northeast of a willow tree near a stone monument in the wall between the field and pasture belonging to Mrs. Jane A. Tracy; thence in a southeasterly direction to the road leading from New London to Soo-Nipi Park, to a maple tree standing on the westerly side of said road eighty-five feet from the bound between land of Nathaniel Knowlton and Mrs. Jane A. Tracy.  Said highway to be built in accordance with the offer made by Mrs. Jane A. Tracy."

The record of the town-meeting contains the following:

"Article 1.  Voted, to discontinue the highway leading from the county road, so called, to the schoolhouse on the corner of the highways leading from New London to Soo-Nipi Park and George's Mills, as per article 1 of the warrant.

"Article 2.  Voted, to instruct the selectmen to lay out and build a new highway, as per article 2 of the warrant."

The highway named in article 2 was subsequently laid out by the selectmen upon petition and constructed, the expense of construction being paid by Mrs. Tracy.  No appeal has been taken from the action of the selectmen upon this petition, but the defendants, who are taxpayers in New London, do not admit that the highway was legally laid out or constructed.  The petition to the selectmen was dated October 2, 1902, and the new highway was completed about July 17, 1903.

*Nathaniel W. Colby* and *Burnham, Brown, Jones & Warren*, for the plaintiffs.

*Eastman & Hollis* and *George W. Stone*, for the defendants.

WALKER, J. The defendants contend that the vote of discontinuance upon which the proceeding is founded is illegal and void. One ground upon which this claim is based is the offer of Mrs. Tracy to build a new highway in place of the old. Unless it was understood that the new highway would be of greater public convenience or less expensive to maintain than the old, the proposition would offer no inducement for a change. The most that can be claimed as the result of the offer is that thereby the town became interested to vote the discontinuance. The defendants' contention, that because of such interest the action taken is illegal and void, is based upon the false assumption that in acting upon a question of highway discontinuance a town acts in a judicial capacity. The release of the public right in a highway, involved in its discontinuance, is in its nature a legislative and not a judicial function, which may be directly performed by the legislative agents of the state. *State* v. *Sunapee Dam Co.*, 70 N. H. 458, 460; *Conn. River Lumber Co.* v. *Company*, 65 N. H. 290, 377, 379, 380, 388; *State* v. *Morse*, 50 N. H. 1, 16; *State* v. *Atherton*, 16 N. H. 203, 213; *State* v. *Hampton*, 2 N. H. 22, 25. The principle of local government authorizes the grant of limited powers of local legislation to municipalities. *State* v. *Hayes*, 61 N. H. 264. It is well understood that, within the limits of the power of legislation conferred upon it, a town-meeting is a legislative body. The proposition that such meeting acts or can act in a judicial capacity is new. If there are situations as to which this claim can be sustained, the conclusion that it was intended that the meeting should act judicially in a particular case cannot be drawn from the imposition of a power properly within the domain of the legislature. A town is always interested in the discontinuance of a highway, because by such action it is relieved of the burden of maintenance. Possibly in this case the new highway will be less expensive to maintain than the old, but it will probably cost something to keep it in repair. The result of Mrs. Tracy's offer, therefore, was that the interest of the town as a corporation in the question passed upon was less than it would have been in the absence of any proposition for a new highway. Individual voters may have a personal interest in having one highway rather than the other; but the private interest of the voters in a town question does not debar them from voting, or the town from acting. *Dorchester* v. *Youngman*, 60 N. H. 385. As the town must always have some

corporate interest in the discontinuance of a highway, the conclusion that interest renders such action void would be a judicial repeal of the statute and an unauthorized impairment of the constitutional right of local self-government.

The vote of the town, which specifically referred to the first article in the warrant, was to discontinue the highway, "provided Mrs. Jane A. Tracy will, at her own expense and without any expense whatever to the town of New London, build a highway to take the place thereof." It is claimed that this vote is void, because it is not a valid exercise of the power conferred by the legislature upon towns to discontinue highways. By section 1, chapter 72, Public Statutes, it is provided that "highways in a town may be discontinued by vote of the town." Section 2 limits this general grant of power by providing that "if the highway was not laid out by the selectmen, . . . the highway shall not be discontinued without the consent of the court." As the highway in question was not laid out by the selectmen, the town's action, if valid, required the approval of the court to become effective. But this qualification or limitation of the power conferred may be eliminated from the present discussion. It has no bearing upon the question of the validity of the town's vote. Until there is a valid vote of the town discontinuing the highway, the consent of the court is unimportant.

Did the town pass a legal vote to discontinue the highway described therein? The only objection to the vote is that the condition upon which the discontinuance was to take effect was beyond the power of the town to impose. No reason is apparent why the general discontinuing power may not be exercised to take effect at a time subsequent to the vote, or when another highway shall be laid out and constructed to take the place of the old one. There is nothing in the statute expressly forbidding such action, while the reasonable and convenient exercise of the discontinuing power in many cases would be seriously hindered, or wholly prevented, if the vote could not be made to depend upon a future event. Although there might be the most urgent public necessity for the discontinuance of an old highway and the construction of a new one, the town might be unwilling to discontinue the old way until the new one had been constructed, while no necessity would exist for the new way while the old one remained. The public need might require the discontinuance of the one and the laying our or building of the other, but not the one without the other; in such a situation the laying out of the new road by the selectmen would be prevented because the old one was not discontinued, and the discontinuance of the old one by the town would be prevented because the new one had not been built.

Such necessary interdependence of the action of distinct tribunals would result in effectually defeating a public highway improvement admittedly demanded upon grounds of the highest public necessity. It is not believed that the legislature intended to limit the power of towns in regard to the discontinuance of highways so as to produce such a result, or to provide in effect that a town shall have no power to vote to discontinue a highway when another way to take its place is subsequently constructed. Such a limitation is based upon no substantial reason, is supported only by technical argument, and results in obvious injustice and hardship. Hence it cannot be sustained. The remark of the court in *Cheshire Turnpike* v. *Stevens*, 10 N. H. 133, 137, that "no latitude is by this statute given to towns to discontinue highways with any reservation or limitation whatever," was unnecessary to the decision of that case and cannot be regarded as an exact statement of the legislative intention. The decision was that a town cannot discontinue a highway during pleasure, reserving a right to open it at any time without paying damages. Such a result might well be reached without assuming the very restricted power of towns indicated in the language of the court.

In *Coakley* v. *Railroad*, 159 Mass. 32, 36, the court say: "The fact that the vote was to discontinue from and after the time when the new road, laid out on the same day, should be opened for use, did not make the discontinuance void. While the laying of the new way and the discontinuance of the old one both result from the same vote or adjudication, it is reasonable that the public should not be excluded from the old road until the new one is ready for use. Whether for the purpose of founding claims for damages the vote would be treated as a present discontinuance, we need not now consider. It is enough to say that this clause did not render the action of the town illegal."

It is a principle of general application that votes passed at town-meetings should be liberally construed. If they fall within the authorized powers of the town, ingenious distinctions between conditions precedent and subsequent will not be unnecessarily resorted to, when the effect would be to defeat the apparent intention of the voters in a matter admittedly within their legislative province. As early as 1826, the court remarked in *Adams* v. *Mack*, 3 N. H. 493, 499, that "it would be extremely mischievous to be very rigorous in the interpretation of" town records. In the recent case of *Brackett* v. *McIntire*, 72 N. H. 67, it was held that a vote of a town "to rescind all action taken by the selectmen relating to a proposed new road or highway" operated as a discontinuance of the highway, which had been laid out by the selectmen. Strictly speaking, the town had no power to rescind the

action of the selectmen in laying out the way.   In a technical sense, the vote was conclusive evidence that the town assumed an authority it did not possess, and consequently it might be argued that the vote was void.   But its validity as a discontinuing vote was upheld upon the ground that its purpose "was to nullify the action of the selectmen so far as the town had power to do so." The construction adopted was a reasonable one, as contra-distinguished from a technical one.   It gave a legal effect to language inartificially employed to express the corporate purpose.   "When it is remembered that the by-laws of corporations of all kinds, and particularly the ordinances of towns and villages, are frequently drawn up by men having little acquaintance with the niceties of legal phraseology, the necessity for a reasonable, rather than a technical, construction becomes apparent."   Tied. Mun. Corp., *s.* 159.   "If an ordinance is susceptible of two constructions, that one must prevail which will preserve its validity ; . . . and this must be done although the construction adopted may not be the most obvious or natural, or the literal one."   1 Beach Pub. Corp., *s.* 517.   See, also, 1 Dill. Mun. Corp., *s.* 420 ; *Lisbon* v. *Clark*, 18 N. H. 234, 238 ; *Knowlton* v. *New Boston*, 72 N. H. 590 ; *Commonwealth* v. *Dow*, 10 Met. 382, 385 ; *Whitlock* v. *West*, 26 Conn. 406.

The vote of the town of New London, taken in connection with the first article of the warrant, unequivocally indicates a purpose to discontinue the old road upon the completion of a proposed highway "to take the place thereof."   It was not deemed desirable to abandon the former as a means for public travel until the latter was constructed.   The vote, therefore, was in effect that the actual discontinuance of the road should not be coincident with the vote, but should be postponed until a new way was opened. To such a vote no legal objection is apparent, while there are many obvious, practical reasons in its support.   *Coakley* v. *Railroad*, *supra.*

Another material condition annexed to the vote was that the building of the new road, whenever that event occurred, should be "without any expense whatever to the town."   It was not important to the town whether this expense was assumed and paid by Mrs. Tracy, or by some other person or persons.   The payment of the expense by some one other than the town would protect the town from that burden, without regard to the question who the particular person might be who should assume the expense.   The reference to Mrs. Tracy in the proviso is immaterial.   The idea of the voters, as reasonably deduced from the vote, was to discontinue the old road when the new highway should be legally laid out and built, without expense to the town.   If any

one should, by appropriate proceedings, cause the new road to be legally laid out and should protect the town against the expense of building it, the old way should thereupon be discontinued, not by some subsequent vote which might or might not be passed, but by virtue of the vote already passed. The defendants' argument upon this branch of the case proceeds upon the theory that the discontinuance was to take effect if Mrs. Tracy would build a new thoroughfare at her own expense, and that the question of the public good in laying it out was deemed unimportant; that is, that the town voted to discontinue the old road without regard to the question of the public good, induced thereto simply by Mrs. Tracy's offer to pay for building a new road for which there was no public necessity. But the case does not authorize that inference. The mere fact that some one is willing to pay the expense of building a highway does not prove that the public good does not require it; and the subsequent laying out of the way by the selectmen upon a petition to them must be presumed, in the absence of evidence to the contrary, to have been regular, involving necessarily a determination of the question of the public good. *Proctor* v. *Andover*, 42 N. H. 348, 357. The expense of building it might have been imposed upon Mrs. Tracy (P. S., c. 67, s. 16), and it is difficult to understand why her willingness to incur that burden should necessarily and as a matter of law render the action of the selectmen void. *Kelley* v. *Kennard*, 60 N. H. 1. In *Brown* v. *Brown*, 50 N. H. 538, the condition annexed to the laying out of the road was plainly void and, as the court say on page 553, "inconsistent with the supposition that the road was required for the public necessity or convenience." For a similar reason *Underwood* v. *Bailey*, 58 N. H. 59, is not in point. But it is unnecessary to pursue this inquiry further; for the vote of discontinuance did not contemplate or provide for illegal action on the part of the selectmen in establishing the new road, and it does not appear that the selectmen in fact exceeded their authority in that respect.

Nor is it to be inferred, upon a reasonable construction of the vote, that it was understood that Mrs. Tracy was to build the road without conforming to and following the statutory requirements relating to the laying out and building of highways. The new highway within the contemplation of the voters was to be a highway legally laid out upon petition to the selectmen and constructed in the manner provided by law. Otherwise it would not take "the place of" the old one. This construction of the corporate purpose is further evidenced by the next vote, instructing the selectmen, the tribunal designated by statute (P. S., c. 67, s. 2), to lay out the proposed highway. While this vote may be deemed to be little more than advice to the selectmen, or in law a mere

expression of the wishes of the voters (*State* v. *Newmarket*, 20 N. H. 519), it shows that the new road contemplated by the town was to be laid out and built in accordance with the provisions of the statute. The discontinuance was not to take effect until the new road had been constructed and had become a statutory highway. In that event the old road would cease to be a statutory highway, and its discontinuance would then become a completed fact, subject only to the consent of the court. Whatever there may be in the action of the town that is *ultra vires* may be rejected without impairing the evident fact of its intention, as above indicated, which was the accomplishment of a legal purpose in a legal way. No material part of the apparent inducement influencing the voters in their discontinuing vote was illegal; and as immaterial irregularities or immaterial matters of inducement do not render the otherwise legal action of the town illegal (*Williams* v. *Park*, 72 N. H. 305), the vote is not invalid for that reason. *Cheshire Turnpike* v. *Stevens, supra.*

As the case discloses no reason why the action of the town in the passage of the discontinuing vote was not authorized, and as the new road contemplated by the vote has been laid out by the selectmen upon petition and constructed without expense to the town, the pending application to the superior court for its consent to the discontinuance would seem to be proper and clearly within its jurisdiction. If there are other legal objections to the laying out of the new way, they may appear upon the hearing of the application; but in the present situation of the case, no valid legal objections of that character to the maintenance of the application are suggested.

The claim that the selectmen have no authority to maintain the petition in behalf of the town cannot be sustained. It is provided by statute (P. S., c. 43, s. 5) that the selectmen "shall manage the prudential affairs of the town." "The particular duties comprehended within the meaning of the phrase 'prudential affairs' are not easily enumerated. . . . Undoubtedly, in the ordinary signification of the term, is intended the transaction of business on behalf of the town, requiring the exercise of discretion and prudence." *Sumner* v. *Dalton*, 58 N. H. 295, 297. "All matters and things necessary to be done in order to carry into effect the lawful powers of towns, seem, in the cases above cited and from the reason of the thing, to be embraced in the phrase." *Pike* v. *Middleton*, 12 N. H. 278, 282. Section 40 of the same chapter provides that "if any town fails to choose agents, . . . the selectmen shall discharge the duties and have the powers of such offices until the same are filled by election or appointment, as provided by law." In *Albany* v. *Abbott*, 61 N. H. 157, it was held

that selectmen had authority under these statutory provisions to begin an action to recover illegal interest paid by the town. It is said in the course of the opinion : " The office of selectmen being instituted by the legislature, an implied authority is conferred on them to bring all suits, as incident to their office, which the proper and faithful discharge of their duties requires." As the vote of the town in this case requires the consent of the court to be effective, it is improbable that the town attempted to do an act that was entirely useless. It is not to be presumed that there was a purpose on the part of the town to overreach those who favored the discontinuance of the highway, by passing a vote of discontinuance and omitting to authorize any one to apply to the court in behalf of the town for consent. The passage of the vote implies that all further steps were to be taken that were necessary to render the action of the town effective ; and the statutes referred to furnish sufficient authority for the action of the selectmen in filing this petition.

There seems to be nothing to support the defence of laches. The delay of the town in bringing the matter to the attention of the court does not appear to be unreasonable. No legal necessity is suggested why the application might not be made as well after the new road was laid out and built as before.

Whether the defendants, who it is said are taxpayers in New London, are properly parties to this proceeding, and whether in that capacity they are entitled to insist upon the objections above considered, are questions which have not been discussed by counsel and which are not decided. The opinion is based upon the assumption that the questions decided are properly raised and presented.

The superior court should proceed with the hearing upon the petition, in accordance with the views herein expressed.

*Case discharged.*

CHASE and BINGHAM, JJ., concurred. PARSONS, C. J., and YOUNG, J., were of the opinion that no tribunal except the town had jurisdiction to determine whether the condition in the vote of discontinuance had been performed, and did not agree to the conclusion that a finding of performance by some other tribunal, together with the conditional action of the town, was a valid discontinuance of the way. They therefore dissented from the result, although concurring in the other positions taken in the opinion.