Belknap
No. 99-662

RODGERS DEVELOPMENT COMPANY & a.

v.

TOWN OF TILTON & a.

October 3, 2001

*Vittek Law Office*, of Franklin (*Paul C. Bordeau* on the brief, and *Joseph F. Vittek, Jr.* orally), for plaintiff Rodgers Development Company.

*Daniel D. Crean*, of Concord, by brief and orally, for defendant Town of Tilton.

*Mitchell & Bates, P.A.*, of Laconia (*Walter L. Mitchell* on the brief and orally), for intervenor Infinity Sherwood Properties, L.P.

*Donahue, Tucker & Ciandella*, of Exeter (*Robert D. Ciandella* and *Robert M. Derosier on the brief, and Mr. Ciandella* orally), for intervenor Market Basket, Inc.

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *William B. Pribis* on the brief), for Wal-Mart Stores, Inc., as *amicus curiae*.

DUGGAN, J. The plaintiff, Rodgers Development Company (Rodgers), and intervenor Infinity Sherwood Properties, L.P. (Infinity) appeal the order of the Superior Court (*McHugh*, J.) affirming the decision of the Tilton Board of Selectmen conditionally laying out two roads across their property. *See* RSA 231:34 (1993). We affirm.

The following facts were found by the trial court or appear in the record before us. Rodgers, Infinity and intervenor Market Basket, Inc. (Market Basket) own abutting property in the commercial district of the defendant, Town of Tilton (town), in the vicinity of Route 3 and Exit 20 of Interstate 93. Infinity leases its property to Wal-Mart Stores, Inc. (Wal-Mart), which maintains a Wal-Mart store thereon. In conjunction with its plans to open a large supermarket on its property, Market Basket petitioned the selectmen for conditional layout of two roads on existing rights-of-way over land owned by Rodgers and Infinity. *See* RSA 231:8, :23 (1993). The proposed layout included widening both roads and converting them to class V highways. The layout also included the elimination of one entrance into the Wal-Mart parking lot on Infinity's property and the modification of a portion of its approved parking lot design. The layout was conditioned upon Market Basket's assumption of the costs of road construction and associated damages and improvements.

After a hearing, the selectmen granted the conditional layout. Rodgers appealed to the superior court, *see* RSA 231:34, and Infinity intervened on

its side. Market Basket intervened on the town's behalf. After a view and a two-day evidentiary hearing, the court affirmed the board's conditional layout. Rodgers and Infinity (hereinafter the landowners) then appealed to this court.

The landowners argue that the trial court erred in: (1) improperly concluding that there was "occasion" to lay out the roads, see RSA 231:8; (2) failing to consider the case de novo, see V.S.H. Realty, Inc. v. City of Manchester, 123 N.H. 505, 508 (1983); and (3) unconstitutionally taking their property for the primary benefit of a private party, see N.H. CONST., pt. I, art. 12.

We first consider whether the court properly concluded that there was occasion to lay out the roads in question as required by RSA 231:8. That statute provides:

> Selectmen of a town, upon petition, may lay out any new class IV highway not financed in whole or in part with federal aid highway funds, and class V or VI highway or alter any such existing highway within their town for which there shall be occasion.

The question of what constitutes occasion to lay out roads has engaged our attention for nearly two hundred years. Indeed, we considered the question settled in 1832, when we decided Dudley v. Cilley, 5 N.H. 558, 560 (1832). Since that time, however, the language we have used to analyze whether occasion exists has varied. In cases in which subtle distinctions were not at issue, we have used different terms to describe our consideration of the same basic question — referring variously to the "need," "necessity," "exigency," "convenience," and "interest" of the public, and balancing those public considerations in various ways against the rights of the affected landowners and the burden of the layout on the town. Compare Dudley, 5 N.H. at 560-61, with Wolfeboro Neck Prop. Owners Assoc. v. Town of Wolfeboro, 146 N.H. 449, 452 (2001). The case before us is the first in many years involving landowners' objection to a proposed layout. Because such a case implicates all of the factors involved in the occasion analysis, it offers an opportunity to clarify the factors and the balancing process.

Determining whether occasion exists is a two-step process. See Dudley, 5 N.H. at 560-61; Wolfeboro, 146 N.H. at 452. The first step is to balance the public interest in the layout against the rights of the affected landowner. See Dudley, 5 N.H. at 560-61. If the rights of the affected landowner outweigh the public interest in the layout, the layout is not

justified and there is no occasion for it. If, however, the public interest justifies the taking of the land without the landowner's consent, the second step is to balance the public interest in the layout against the burden it imposes upon the town. *See id.* If the balancing required by the second step favors the public interest, occasion for the layout exists.

■ The public interest in question encompasses a spectrum of levels of necessity ranging from "exigency," *Dudley*, 5 N.H. at 561, meaning "urgency," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (unabridged ed. 1961), to mere "convenienc[e]," *Dudley*, 5 N.H. at 561, and encompassing such intermediary levels of requirement as "need," *Rockhouse Mt. Property Owners Assoc. v. Town of Conway*, 133 N.H. 130, 133-34 (1990), and "necessity," *Jackson v. Ray*, 126 N.H. 759, 762 (1985). Because the analysis involves balancing, the extent of the necessity for the layout will determine the weight attributed to the public interest. Thus, an exigent need for a road's layout may justify a significant invasion of the rights of the landowner, while a layout proposed for mere convenience may justify only a slight imposition on those rights.

■ We now consider the case at hand in light of this standard, mindful that "[t]he superior court's conclusion that occasion exists for the public layout of roads must be supported by '*some* evidence,' and we will not disturb its determination in the absence of gross mistake or fraud." *Rockhouse*, 133 N.H. at 134 (citation omitted); *see Wolfboro*, 146 N.H. at 452.

■ The superior court assessed the public interest in the proposed layout in terms of an enhanced tax base, additional jobs, increased competition among grocers, keeping large commercial development in a particular section of town and the inability to develop this particular parcel for high-traffic retail use absent the layout. On the other side of the scales, the court considered the impact of the layout on the rights of the landowners, including the possibility that Wal-Mart might use the reconfiguration of its entrances and parking lot as an excuse to abandon its lease with Infinity. Notwithstanding that possibility, the court concluded, and evidence in the record supports, that, on the whole, the proposed layout actually benefited the landowners rather than burdening them because it was conducive to future development of their property. Thus, the first step in the occasion analysis involved weighing a public interest that was more than mere convenience, but less than exigency, against virtually no imposition on the rights of the landowners, resulting in a balance in favor of the layout.

■ Accordingly, we move to the second inquiry: whether the public interest in the proposed layout outweighs the burden the layout will impose upon the town. The court considered the fact that the conditions placed upon the layout required Market Basket, as the specially benefited party, to fund the construction of the roads. It also considered that the increased development potential accruing to the Market Basket site would not present a burden to the school system as would residential development. The court concluded that "there is absolutely no burden to the Town by adopting the conditional layout." Because sometime in the future the responsibility for maintenance of the roads in question will revert to the town, we do not agree that the town bears absolutely no burden. However, the burden is slight in relation to the public's interest in having the layout occur. We therefore conclude that the second balancing equation also weighs in favor of layout and, thus, that the court did not err in finding that occasion existed to lay out the roads.

We next consider the landowners' contention that the trial court failed to apply the proper standard of review in that it accorded great deference to the selectmen's decision to lay out the roads. Parties aggrieved by the selectmen's determination that there is occasion to lay out a highway are entitled to *de novo* review before the superior court on that issue. *See V.S.H. Realty*, 123 N.H. at 507-508.

The court heard two days of testimony, took a view of the property in question and issued a decision in which it stated, after express consideration of the issue, that it would "consider this case on a de novo basis." Nevertheless, the landowners argue that the court instead employed a deferential standard of review. Their argument has two bases. First, they point to the court's reference to "Supreme Court cases cited by each party conclud[ing] that a municipality's decision in the layout of highways is entitled to great deference" as a demonstration that the court erroneously applied that standard. A review of the court's order, however, reveals that the court was merely acknowledging contrary precedent — based on a prior codification of the layout statute — which indicated that such review was proper.

■ Second, they point to the court's quotation from *Rockhouse, supra*, stating the supreme court's appellate standard of review, which requires that the superior court's conclusion that occasion exists must be supported by "*some* evidence," and to the court's later statements that there was "some evidence of th[e] fact" that the construction of a supermarket on Market Basket's property would provide public benefit. According to the landowners, these references to "some evidence" demonstrate that the court did not properly balance the factors contributing to a conclusion that

there was occasion to lay out the roads, but rather applied the appellate review standard by merely relying on the fact that there was some evidence of public benefit. As set forth above, this is not the case. The court considered not only the benefit that would accrue to the public in laying out the roads, but also the absence of burden on the town and the net, positive impact the layout would have on the landowners. We conclude that the court applied the correct standard.

■ We finally address the constitutional question. "Under part I, article 12 of the State Constitution, the power of eminent domain may be exercised only if the condemned property is 'applied to public uses.' Whether a particular use is a public use is a question of law to be resolved by the courts." *Merrill v. City of Manchester*, 127 N.H. 234, 236 (1985). The landowners argue that taking their property for use as public roads in this case primarily benefits Market Basket and is therefore not a public use. They contend that such use is not comparable to that of a school, a playground or a utility line, each of which directly benefits the public. *See id.* at 237. We disagree. It is well settled that "whenever property is taken for a highway, it is for the public use," *Crosby v. Hanover*, 36 N.H. 404, 420 (1858), notwithstanding that the highway may greatly benefit a private party. *See* 26 AM. JUR. 2D *Eminent Domain* § 74, at 512 (1996). Thus, although Market Basket will be particularly benefited by the dedication of the roads to public use, the taking of the landowners' property for that use is constitutional.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.