Cheshire
No. 2004-802

TOWN OF HINSDALE

v.

TOWN OF CHESTERFIELD

Argued: October 20, 2005
Opinion Issued: December 29, 2005

*Bragdon & Berkson, P.C.*, of Keene (*H. Neil Berkson* and *Susan R. Lachman* on the brief, and *Mr. Berkson* orally), for the plaintiff.

*Tower, Crocker & Mullins, P.A.*, of Jaffrey (*Thomas P. Mullins* on the brief and orally), for the defendant.

GALWAY, J. The defendant, Town of Chesterfield (Chesterfield), appeals the decision of the Superior Court (*Sullivan*, J.) reversing a Chesterfield town meeting vote to discontinue a portion of a class V highway under RSA 231:45-a, I (1993). We affirm.

On appeal, the defendant argues that: (1) the trial court applied an incorrect legal standard; and (2) the facts do not support the court's determination.

The trial court found the following facts. North Hinsdale Road is a class V highway that is not maintained in the winter and runs through Chesterfield into Hinsdale, where it becomes Plain Road Extension, and then Plain Road. These three roads provide a means of traveling north-south between Route 63 in Chesterfield and Route 119 in Hinsdale. Plain Road runs through a thickly settled part of Hinsdale, which has contributed to increased traffic on North Hinsdale Road in recent years.

On March 11, 2003, the Chesterfield Town Meeting voted to discontinue, subject to gates and bars, a quarter-mile section of North Hinsdale Road, beginning at the Hinsdale border and continuing northerly for a quarter of a mile into Chesterfield. Closing this part of the road blocked residents living on Plain Road in Hinsdale from using North Hinsdale Road to reach Route 63 in Chesterfield. After the town vote, the Chesterfield Selectmen installed locked gates that blocked North Hinsdale Road at the Hinsdale border. Chesterfield was careful not to cut off its own residents from using North Hinsdale Road. After the discontinuance, Hinsdale residents living on or near Plain Road could still reach Route 63, but had to travel as much as ten miles farther than before the discontinuance.

The trial court found that keeping North Hinsdale Road open was important not only for public convenience, but also for public safety. Discontinuing the road eliminated the only reasonable route for Hinsdale residents living on Plain Road to flee from a nuclear accident at the Vermont Yankee Power Plant. Discontinuance of North Hinsdale Road also cut off a route that police used for backing up other police officers, and

the cost to Chesterfield of maintaining the quarter-mile section of North Hinsdale Road was minimal.

## I

We first consider Chesterfield's argument that the trial court applied an incorrect legal standard. Chesterfield asserts that we should apply the standard articulated in *Eastborough Corp. v. City of Eastborough*, 441 P.2d 891 (Kan. 1968), which states that the town vote should be affirmed absent compelling evidence that the town acted unreasonably.

As the trial court's decision to apply a particular legal standard is a question of law, we review the decision *de novo*. *HippoPress v. SMG*, 150 N.H. 304, 308 (2003). We begin our analysis with a review of the statute that both parties agree applies. Entitled "Appeal from Discontinuance; Damages," RSA 231:48 (1993) states:

> Any person or other town aggrieved by the vote of a town to discontinue any highway, or discontinue any highway as an open highway and made subject to gates and bars, may appeal therefrom to the superior court for the county in which such highway is situate by petition .... *[L]ike proceedings shall be had on such petition as in the case of appeals in the laying out of class IV, V, and VI highways ....*

(Emphasis added.)

We apply the following standard of review for statutory interpretation:

> The interpretation of a statute is a question of law, which we review *de novo*. We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include.

*Woodview Dev. Corp. v. Town of Pelham*, 152 N.H. 114, 116 (2005) (citations omitted).

RSA 231:48 expressly applies to appeals from town votes to discontinue a class V highway, and therefore applies to the instant appeal. In stating that "like proceedings shall be had on such petition as in the case of appeals in the laying out of class IV, V, and VI highways," the

statute plainly requires that appeals of the discontinuance of any highway should proceed similarly to appeals of the laying out of such a highway.

■ We have previously determined that the laying out of a class IV, V, or VI highway receives *de novo* review on appeal to superior court. *Rodgers Dev. Co. v. Town of Tilton*, 147 N.H. 57, 61 (2001); *V.S.H. Realty, Inc. v. City of Manchester*, 123 N.H. 505, 507-08 (1983). *De novo* review means that the reviewing court decides the matter anew, neither restricted by nor deferring to decisions made below. *In re Juvenile 2002-511-A*, 149 N.H. 592, 594 (2003); *see also Salve Regina College v. Russel*, 499 U.S. 225, 238 (1991) (stating that when *de novo* review is compelled, no form of appellate deference is acceptable). In providing that an appeal of the discontinuance of a highway entails "like proceedings" to an appeal of the layout of a highway, RSA 231:48 requires that trial courts apply *de novo* review to a town's vote in appeals of discontinuances. Chesterfield agrees with this interpretation, but argues that the statute does not address what legal standard should apply.

Although RSA 231:48 provides for like *proceedings*, the statute does not set forth the *substantive* legal standard to apply in discontinuance appeals. We are therefore left with little statutory guidance from the legislature as to what legal standard to apply. "If a statute is ambiguous . . . we consider legislative history to aid our analysis. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Hughes v. New Hampshire Div. of Aeronautics*, 152 N.H. 30, 38-39 (2005).

Our review of the legislative history of RSA 231:48 uncovered nothing that assists us in determining the intended legal standard. Nor have we found case law that would settle this issue. Accordingly, we will determine the appropriate legal standard by considering the policy sought to be advanced by the statutory scheme. *See id; cf.* 16 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, MUNICIPAL LAW AND TAXATION § 54.04, at 583 (1993) (concluding that, because New Hampshire statutes do not expressly set forth the conditions necessary for a discontinuance, those conditions must be read into the statutes).

■ We first note that the legislature has manifested an intent to protect the interests of adjoining towns. RSA 231:48 provides that one town may appeal another's vote to discontinue a highway. RSA 231:44 (1993) provides that when one town discontinues a highway that connects to a highway in an adjoining town, the adjoining town must receive notice of the discontinuance. We therefore conclude that the legal standard in this case must consider the interest that an aggrieved town has in continued use of the highway. As for the appellee town, which voted to discontinue

the highway, we have previously stated that the burden of maintaining a highway is a significant consideration for a town in deciding whether or not to discontinue the highway. *New London v. Davis*, 73 N.H. 72, 74 (1904); *see also* LOUGHLIN, *supra* § 54.04, at 583. Accordingly, the legal standard in this case must also consider the burden that the appellee town would bear in continuing the road. Considering the aforementioned factors, we conclude that the substantive legal standard in this case balances the aggrieved town's interest in the road's continuance against the burden that maintenance of the road would impose on the town that voted to discontinue the road, with the burden of proof resting on the aggrieved town.

This standard is analogous to part of the legal standard for determining whether an occasion exists for the layout of a road. *See Rodgers Dev. Co.*, 147 N.H. at 60 (balancing "the public interest in the layout against the burden it imposes upon the town"). To the extent that the legislature intended for layout and discontinuance appeals to have similar legal standards, our holding here is consistent with that intent. If our holding should be contrary to the legislature's intent, however, the legislature is free to adopt a different standard by amending the statute.

## II

We next consider whether the facts support the trial court's decision to reverse Chesterfield's town vote to discontinue North Hinsdale Road. To do so, we must determine the standard by which we review the trial court's decision. We turn again to the "like proceedings" language of RSA 231:48. A plain reading of this language directs us to apply the same procedural standards to a discontinuance appeal as a layout appeal. Standards of review are procedural in nature. *Alison H. v. Byard*, 163 F.3d 2, 4 (1st Cir. 1998). We therefore find it clear that our standard in reviewing a trial court's decision in a discontinuance appeal should be the same as our standard in reviewing a trial court's decision in a layout appeal. We have previously determined that "the superior court's conclusion that occasion exists for the layout of roads must be supported by *some* evidence, and we will not disturb its determination in the absence of gross mistake or fraud." *Rodgers Dev. Co.*, 147 N.H. at 60. Accordingly, we conclude that "some evidence" is the appropriate standard by which to review the trial court's *de novo* determination.

The trial court assessed Hinsdale's interest in continuing North Hinsdale Road by finding: (1) the discontinuance cut off the only reasonable escape route for some Hinsdale residents from such potential disasters as an accident at the Vermont Yankee Nuclear Power Plant or

flooding from the Connecticut River; (2) North Hinsdale Road received substantial use by residents of Hinsdale, and that use was increasing at the time of Chesterfield's town vote; (3) North Hinsdale Road allowed more than 300 Hinsdale residents to reach Route 63 by traveling as much as ten miles less than without North Hinsdale Road; and (4) North Hinsdale Road allowed the police departments of both Chesterfield and Hinsdale to provide better backup, particularly in emergency situations, by reducing their response time as much as twenty to thirty minutes. In weighing the burden on Chesterfield to maintain North Hinsdale Road, the trial court found: (1) a Chesterfield road agent specifically stated that the cost of maintaining North Hinsdale Road was minimal; and (2) "the deliberate purpose of closing the quarter of a mile section of the road was to create a barricade or plug or roadblock to the traffic coming from or to Hinsdale," because "some Chesterfield residents reside close to North Hinsdale Road and are bothered by the traffic." The trial court determined that the interest of Hinsdale's residents in continuing North Hinsdale Road outweighed the burden that continuing the road imposed on Chesterfield. We conclude that the trial court applied the proper balancing test and that there was substantially more than some evidence to support the trial court's decision.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.