NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2019-0302

BELLEVUE PROPERTIES, INC.

v.

TOWN OF CONWAY & a.

Argued: May 27, 2020
Opinion Issued: August 25, 2020

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Roy W. Tilsley, Jr. and Christina A. Ferrari on the brief, and Mr. Tilsley orally), for the plaintiff.

Hastings Malia P.A., of Fryeburg, Maine (Peter J. Malia, Jr. on the brief and orally), for defendant Town of Conway.

Sulloway & Hollis, P.L.L.C., of Concord (Derek D. Lick orally), for defendants 13 Green Street Properties, LLC, 1675 W.M.H., LLC, and Settlers' R2, Inc., joined in the brief of Town of Conway.

DONOVAN, J. The plaintiff, Bellevue Properties, Inc., appeals an order of the Superior Court (Ignatius, J.), affirming the Town of Conway's decision to discontinue a public way that provides access to the plaintiff's property. The plaintiff argues that the trial court applied an incorrect legal standard to

evaluate the Town's decision and erred in concluding that the Town's interests in discontinuing the road outweighed the plaintiff's interest in its continuance. Because the trial court applied the proper legal standard and its decision is supported by the record, we affirm.

## I. Facts

The trial court found, or the record supports, the following facts. The plaintiff owns and operates a hotel located in North Conway. The hotel property abuts a retail village known as Settlers' Green, which is owned and operated by defendants 13 Green Street Properties, LLC, 1675 W.M.H., LLC, and Settlers' R2, Inc. (collectively, "Settlers"). The hotel and Settlers' Green are located between United States Route 302/New Hampshire Route 16 (Route 302) and North-South Road, which run parallel to each other. A road named Common Court encircles the hotel and much of Settlers' Green, providing access to the properties. Approximately half of Common Court is privately owned and maintained by Settlers, whereas the other half is public, owned and maintained by the Town.

The public can access the hotel in three ways: (1) from Route 302 by turning onto Settlers' Green Drive, a private road owned and maintained by Settlers, which connects to the private section of Common Court; (2) from Route 302 by turning onto Barnes Road, a public road, and then onto McMillan Lane, which connects to the public section of Common Court; and (3) from North-South Road by turning onto Fairway Lane, a public road that connects to the public section of Common Court. A recorded easement allows hotel guests to travel over Settlers' Green Drive and the private section of Common Court. Although the hotel itself is not visible from Route 302, two pylon signs for the hotel are located at the intersection of Route 302 and Settlers' Green Drive. A sign for the hotel is also located in the area of Common Court and Fairway Lane, near North-South Road. To reach the hotel, most of its guests turn onto Settlers' Green Drive from Route 302.

As part of its retail village, Settlers planned to construct a mixed-use development, including a supermarket and parking lot on an undeveloped parcel of land, known as Lot 92 on the Town of Conway tax map, and another lot that abuts Lot 92's western boundary, both of which Settlers owns. McMillan Lane, however, runs through portions of both lots along Lot 92's western boundary. To enable it to construct a single, continuous development across both lots, Settlers sought to remove McMillan Lane and replace it with a newly constructed road along Lot 92's eastern boundary. Like McMillan Lane, the new road would run from Barnes Road to the public section of Common Court. Settlers planned to build the new road at its own expense and would construct sidewalks, bike paths, and other amenities along the road, similar to its other private roads.

2

Accordingly, in October 2016, Settlers submitted a subdivision application to the Town's planning board, seeking to create a parcel of land within Lot 92 that runs along its eastern boundary, which would serve as the new road. Settlers, however, was concerned about moving forward with its planning board application without assurance that the Town would discontinue McMillan Lane, which required a town vote. See RSA 231:43, I (Supp. 2019). While the subdivision application was pending, representatives from Settlers met with officials from the Town, including the town engineer, the town planning director, and the town manager, to discuss the development plan. The town engineer suggested that the Town first obtain the voters' approval to discontinue McMillan Lane. It was agreed that, if that occurred, Settlers would maintain McMillan Lane and keep it open to the public until Settlers received planning board approval for the new road and completed construction of it. Under this plan, the new road would remain privately owned and maintained by Settlers, but it would be open to the public.

Subsequently, the Town's attorney drafted a proposed warrant article and the Town's board of selectmen voted unanimously to recommend the article for consideration at the next town meeting. The Town notified the plaintiff of the warrant article, as required by RSA 231:43, II (Supp. 2019).

In February 2017, the Town issued a public notice for the upcoming deliberative town meeting, which included the following warrant article regarding McMillan Lane:

> **ARTICLE 27:** To see if the Town will vote to discontinue completely and absolutely an 870 foot long Town road known as McMillan Lane. The road to be discontinued is described as follows: The two-lane road beginning at the intersection of Barnes Road and ending at the Common Court intersection. Discontinuance is conditioned on the road being open, maintained, and unmodified by the owners of the abutting parcels to which the road would revert 13 Green Street Properties, LLC, 1675 W.M.H., LLC, and Settlers' R2, Inc. and their successors, (informally known as Settlers OVP) until such time as Settlers OVP has obtained Site Plan Review and/or Subdivision approval from the Conway Planning Board to eliminate McMillan Lane and to construct and complete, if found necessary by the Planning Board, an alternative road prior to closing McMillan Lane.

On March 6, the Town held its deliberative town meeting, where residents raised two primary concerns with the warrant article. First, some residents expressed concern that the article provided no requirement that Settlers create a replacement road. Second, because the article contained no language restricting the location of a replacement road, residents expressed concern that the new road would connect directly to North-South Road, a

3

street constructed to alleviate traffic on Route 302. To address these concerns, the residents voted to amend the warrant article by: (1) removing the language "if found necessary by the Planning Board"; and (2) adding after the phrase "to eliminate McMillan Lane," the condition "and shall construct and complete an alternate road with no new egress to the North-South Road prior to closing McMillan Lane."

Thereafter, at the annual meeting on April 11, the article was adopted. See RSA 231:43, I. At no time during the deliberative process did the Town hear from the plaintiff regarding the impact of the discontinuance on the hotel.

After the adoption of the warrant article, McMillan Lane was conditionally discontinued and the Town ceased maintaining it. See RSA 231:50 (2009). Since then, Settlers has taken control of McMillan Lane by, inter alia, maintaining the road with the same consistency as it maintains Settlers' Green Drive and the private section of Common Court. Settlers has also kept McMillan Lane open to the public.

The plaintiff appealed the Town's decision to discontinue McMillan Lane to the superior court, see RSA 231:48 (Supp. 2019), requesting that the court reverse the Town's decision. In November 2018, while that appeal was pending in the trial court, the Town's planning board conditionally approved a site plan and boundary line adjustment application submitted by Settlers, allowing Settlers to construct the new road. As a condition subsequent to its final approval, the planning board required Settlers to "substantially complete and open to public use" the new road "prior to closure of McMillan Lane." (Bolding omitted.)

Following a bench trial, the court affirmed the Town's decision to discontinue McMillan Lane. Based upon the evidence presented at trial, the court found that the discontinuance of McMillan Lane will result in the Town saving approximately $7,821 per year in maintenance costs, will allow the development of a parcel of land "consistent with Conway's town plan," and will bring economic benefits and additional housing to the community. The trial court further noted that the new road will "serve the same purpose as McMillan Lane has done for Conway residents to avoid traffic congestion along Route 302" because the Town's authorization for the discontinuance required Settlers to keep the new road open to the public. Based upon these factors, the trial court found that "the benefits to Conway of discontinuing McMillan Lane outweigh [the plaintiff's] interests in" its continuance.

The trial court rejected the plaintiff's argument that the discontinuance of McMillan Lane would cause harm to the plaintiff's business interests by depriving it of a public road and requiring that it rely upon Settlers, a private entity, to maintain and provide public access to the new road. The trial court concluded that any "potential harm" that might result from the discontinuance

4

was "too uncertain to outweigh Conway's interests in discontinuing McMillan Lane," finding that Settlers has never failed to maintain the private section of Common Court or Settlers' Green Drive and that no evidence suggests that Settlers or its successors would cease doing so. The trial court also noted that the discontinuance of McMillan Lane would not impact the ability of the hotel's guests to access the hotel using other routes.

The plaintiff filed a motion for reconsideration, which the trial court denied. This appeal followed.

## II. Analysis

On appeal, the plaintiff makes two primary arguments. First, it argues that the trial court applied an incorrect legal standard to evaluate the decision to discontinue McMillan Lane — specifically, that the trial court utilized a balancing test that was inconsistent with the balancing test we set forth in Town of Hinsdale v. Town of Chesterfield, 153 N.H. 70, 73-74 (2005). Second, the plaintiff argues that the trial court erroneously concluded that the Town's interests in discontinuing the road outweighed the interests of the plaintiff and the public in the road's continuance. We first address the plaintiff's argument challenging the legal standard applied by the trial court.

## A. Legal Standard

Because the trial court's decision to apply a particular legal standard is a question of law, we review the decision de novo. See Town of Hinsdale, 153 N.H. at 72. Moreover, to the extent that this appeal requires that we engage in statutory interpretation, our review is also de novo. Balise v. Balise, 170 N.H. 521, 524 (2017). In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. Id. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. Unless we find statutory language to be ambiguous, we need not examine legislative history. See id.

RSA 231:48 governs appeals from the discontinuance of a public way. It provides, in relevant part:

> Any person or other town aggrieved by the vote of a town to discontinue any highway . . . may appeal therefrom to the superior court for the county in which such highway is situate by petition within 6 months after the town has voted such discontinuance. . . . [L]ike proceedings shall be had on such petition as in the case of appeals in the laying out of class IV, V and VI highways.

5

We have held that the statute "plainly requires that appeals of the discontinuance of any highway should proceed similarly to appeals of the laying out of such a highway." Town of Hinsdale, 153 N.H. at 72-73. Therefore, like appeals of a town's decision to lay out a highway, an appeal of a town's decision to discontinue a highway receives de novo review by the superior court. See id. at 73; Rodgers Dev. Co. v. Town of Tilton, 147 N.H. 57, 61 (2001) (explaining that, in an appeal of a town's decision to lay out a highway, the superior court reviews the town's decision de novo).

However, "[a]lthough RSA 231:48 provides for like proceedings, the statute does not set forth the substantive legal standard to apply in discontinuance appeals." Town of Hinsdale, 153 N.H. at 73. In Town of Hinsdale, we addressed, for the first time, the substantive legal standard to be applied to discontinuance appeals. See id. at 73-74. There, the Town of Hinsdale appealed the Town of Chesterfield's decision to discontinue a portion of a highway that extended into both towns. See id. at 71. The trial court reversed Chesterfield's decision, concluding that the numerous negative consequences that resulted from the discontinuance — including the elimination of access to the only reasonable route for Hinsdale residents to reach a main highway and to escape from potential disasters in the area — outweighed Chesterfield's burden of maintaining that discontinued portion of the highway. See id. at 71, 74-75. On appeal, Chesterfield argued that the trial court applied an incorrect legal standard. Id. at 72.

To determine the proper standard, we "consider[ed] the policy sought to be advanced by the statutory scheme." Id. at 73. We first reasoned that, because the legislature "manifested an intent to protect the interests of adjoining towns" by requiring notice to adjoining towns of the discontinuation, see RSA 231:44 (2009), "the legal standard in this case must consider the interest that an aggrieved town has in continued use of the highway." Town of Hinsdale, 153 N.H. at 73. As for the town that voted to discontinue the highway, we noted that we have previously recognized the burden of maintaining a highway as a "significant consideration for a town in deciding whether or not to discontinue the highway." Id. at 73-74; see New London v. Davis, 73 N.H. 72, 74 (1904). Thus, we also reasoned that "the legal standard in this case must also consider the burden that the appellee town would bear in continuing the road." Id. at 74. Based upon these considerations, we concluded that the standard "in this case balances the aggrieved town's interest in the road's continuance against the burden that maintenance of the road would impose on the town that voted to discontinue the road," and upheld the trial court's decision under that standard. Id. at 74-75.

The trial court here correctly noted that we have not yet addressed the substantive legal standard that applies when, as here, an appeal of a public highway discontinuance is brought by an abutting property owner, rather than

6

an abutting town.  Nevertheless, the trial court found that a "similar balancing test" to that in Town of Hinsdale was appropriate "[b]ecause abutting property owners are afforded similar statutory protections as adjoining towns, and because Conway clearly has an interest in the discontinuance of McMillan Lane."  However, the trial court determined, based upon the language of RSA 231:43, I, that "a town's statutory authority to discontinue roads need not be premised solely upon reduced maintenance costs."  The trial court therefore determined that it would consider the Town's "other interests in discontinuing McMillan Lane," in addition to the burden of maintaining the road, and "balance Bellevue's interests in the road's continuance against Conway's interests in discontinuing the road."

The plaintiff does not contend that the trial court erred in utilizing the balancing test in Town of Hinsdale as the substantive legal standard in this case.  Rather, it argues that the substantive legal standard we articulated in Town of Hinsdale "specifically restricts the trial court's consideration of a Town's interest to the burden that maintenance of the road would impose on the Town."  The plaintiff contends that the trial court erred in considering the Town's other interests in the road's discontinuance, rather than limiting its analysis to the burden of maintaining the road.  We disagree.

RSA 231:43, I, authorizes a town to discontinue a class IV, V, or VI highway.  As relevant here, it provides, simply, that "[a]ny class IV, V or VI highway, or any portion thereof, in a town may be discontinued by vote of a town."  RSA 231:43, I.  Accordingly, the statute does not "specifically require that there be any particular grounds to justify discontinuance."  16 Peter J. Loughlin, New Hampshire Practice: Municipal Taxation and Road Law § 54.04, at 54-7 (2008); see RSA 231:43, I.  Thus, it follows that, when the town's decision to discontinue a highway is based upon other interests, in addition to the interest in alleviating the burden of maintenance, the trial court may consider those interests in reviewing the town's decision.  See Town of Hinsdale, 153 N.H. at 73-74.

Our articulation of the balancing test in Town of Hinsdale implicitly recognized this principle.  See id.  In determining the proper legal standard, we characterized the burden of maintaining a highway — the only factor that could have reasonably supported Chesterfield's decision, see id. at 71, 74-75 — as "a significant consideration" for a town in deciding whether to discontinue a highway, and determined that the legal standard "in this case must . . . consider the burden that the appellee town would bear in continuing the road." Id. at 74 (emphases added).  Thus, while we recognized that the burden of maintaining a highway was a relevant consideration in evaluating Chesterfield's decision to discontinue the highway based upon the specific facts of the case, we did not state that it was the only factor a town may consider in every case.  See id.  We further highlighted the narrow application of the balancing test to the specific facts of the case when we expressly noted that the

7

balancing test was "the substantive legal standard" to be applied "in this case," thereby leaving open the consideration of other factors when they are relevant. Id. at 74 (emphasis added). The plaintiff does not identify, nor can we find, any language in Town of Hinsdale that restricts a trial court from considering factors other than the burden of maintenance costs when other considerations are relevant in evaluating a town's decision to discontinue a road.[1] See id. at 73-74.

In light of the language of RSA 231:43, I, and our articulation of the balancing test in Town of Hinsdale as applied to that particular case, we conclude that Town of Hinsdale does not limit a trial court to considering only the burden of maintenance costs in reviewing a town's decision to discontinue a highway. The plaintiff makes no argument that the legal standard set forth in Town of Hinsdale or the trial court's consideration of specific interests of the Town — such as indirect economic benefits that may result from the road discontinuance — is unconstitutional or otherwise legally erroneous. See N.H. CONST. pt. I, art. 12-a. Therefore, we conclude that the trial court did not err when it considered the Town's other interests in addition to maintenance cost savings.

## B. Balancing the Interests

The plaintiff next argues that, "even if it were appropriate for the trial court to consider factors in addition to the maintenance burden on the Town," the benefits to the Town that would result from the discontinuance of McMillan Lane do not outweigh the plaintiff's interest in its continuance. The plaintiff contends that, because the new road will remain privately owned and maintained by Settlers, the discontinuance of McMillan Lane as a public road deprives the plaintiff and its employees, guests, and other invitees of the "unfettered legal right to access [its] property" from Route 302 "by a legally protected public way." Because the Town has no legal obligation to maintain and provide public access to a private road, the plaintiff argues that it will have no recourse if Settlers or its successors do not maintain or otherwise deny access to the road due to the "fail[ure] to act cooperatively and in good faith" or due to financial failure. The plaintiff contends that, in disregarding the plaintiff's concerns about future access as "too uncertain to outweigh Conway's interests," the trial court erroneously overlooked the legal distinction between a public road and a private road open for public use and the potential negative consequences that may flow from the new road's private status.

---

[1] Such a limited scope of review is also contrary to the balancing test that applies to appeals of a town's decision to lay out a public highway, see Rodgers Dev. Co., 147 N.H. at 59-60, upon which we relied, in part, in Town of Hinsdale to determine the proper balancing test, see Town of Hinsdale, 153 N.H. at 74.

Our standard of review of a trial court's decision in a discontinuance appeal is deferential.  See Town of Hinsdale, 153 N.H. at 74.  We will uphold the trial court's decision in a discontinuance appeal if it is "supported by some evidence."  Id. (quotation omitted).  We will not disturb its determination in the absence of gross mistake or fraud.  Id.  The burden of proof rests on the plaintiff to demonstrate that its interests outweigh those of the Town.  See id.

We find the plaintiff's argument to be unavailing.  As an initial matter, evidence in the record supports the trial court's conclusion that Settlers will not cease maintaining the new road or close it to the public.  Historically, Settlers has not failed to maintain and provide public access to Settlers' Green Drive or the private portion of Common Court, and, once the Town voted to discontinue McMillan Lane, Settlers has kept it open to the public and has consistently maintained it.  Indeed, it is in Settlers' interest to continue to maintain all of its private roads that provide access to Settlers' Green, including the new road, which will abut and provide public access to the businesses within the retail village.  As the principal of Settlers testified, Settlers believes that the new road is "paramount" to ensure public access to the development, and that, even if the proposed grocery store failed, Settlers "would still maintain that road just like" it maintains Settlers' Green Drive.  Additionally, Settlers' principal understood the planning board's site plan approval to require Settlers to keep the new road open to the public, and that, if Settlers failed to do so, the planning board could revoke its approval.  Thus, not only does the evidence demonstrate that the plaintiff currently has access to the now-privately owned McMillan Lane, it shows that this access will continue given Settlers' significant business and legal interests in continuing to keep the new road open to the public and maintained.

Furthermore, although the plaintiff contends that it has no legal recourse to ensure its access to the new road, the evidence in the record suggests otherwise.  First, although the plaintiff complains that it has not been granted an easement over the new road, the principal of Settlors provided undisputed testimony that the plaintiff has never requested an easement, and that, if it did, Settlers would "be happy to" provide it with one.  Second, the trial court heard testimony from the Town's planning director that the planning board's conditional approval required Settlers to open the new road to the public prior to closing McMillan Lane.  He further testified that, "if there is a violation" of a requirement set forth in the planning board's approval, "anybody can bring that [violation] to the attention of the Town," which can then "take action on it" by revoking the certificate of occupancy, obtaining injunctive relief, or imposing fines.  See RSA 676:4-a, I(c) (Supp. 2019), :15 (2016), :17 (2016).  The plaintiff makes no contention that these remedies are unavailable to it should Settlers fail to maintain or provide access to the new road.

Finally, even if Settlers or its successors failed to maintain or provide access to the new road — whether due to intentional malfeasance or

9

circumstances beyond its control — the plaintiff fails to identify any evidence demonstrating that the plaintiff would suffer harm as a result. According to the record, hotel guests can continue to access the hotel from Settlers' Green Drive over which the plaintiff holds an easement, and which, unlike McMillan Lane, connects directly to Route 302 and includes signs for the hotel. According to the testimony of the plaintiff's principal, Settlers' Green Drive, which he described as the hotel's "main entrance," is the primary way in which guests access the hotel. Hotel guests can also access the hotel from North-South Road by using Fairway Lane, a public road, where a sign for the hotel also appears. The plaintiff does not contend, and the record fails to demonstrate, that these two ways would not provide sufficient access to the hotel should public access to the new road somehow become restricted. Thus, based upon the record, it was reasonable for the trial court to give less weight to the plaintiff's concerns over future access when balancing the interests of the parties.

The plaintiff further asserts that, in weighing the interests in favor of the Town, the trial court considered factors that are not supported by the record. First, it argues that the record does not support the trial court's finding that the new development would provide additional residential housing to the area. However, even if we accept the plaintiff's argument and cast aside any consideration of the addition of residential housing or the other indirect economic benefits that may flow from the private development, there is still some evidence in the record to support the trial court's decision, such as the public benefits gained by the Town by virtue of: (1) the reduction in yearly maintenance costs; and (2) the use of a new road, at no cost to the public, to replace McMillan Lane — an approximately $1 million project, according to undisputed testimony. See Town of Hinsdale, 153 N.H. at 74. According to the record, Settlers and the Town agreed that the road would be built to current standards and would include sidewalks, bike paths, and a 10-foot grass esplanade, providing a significant upgrade from McMillan Lane, an older road originally constructed in 1992. The cost-free construction of this new road with additional amenities and the elimination of the Town's yearly maintenance obligations support the trial court's conclusion that the benefits to the Town of discontinuing McMillan Lane outweigh the plaintiff's interests in continuing the road. Accordingly, even if unsupported by the record, the trial court's consideration of residential housing did not constitute "gross mistake or fraud" in light of the other evidence in the record that supports its decision. See Town of Hinsdale, 153 N.H. at 74.

Second, the plaintiff argues that the trial court erroneously found that the new road would revert to the Town when it stated that the road would be "dedicated to public use." The plaintiff contends that this statement is a "faulty finding of fact and of law" that is not supported by the record. As a legal matter, the dedication of land for public use occurs when an owner devotes "land to a public use," which, if accepted by the town, "turns the street

10

into a public highway, and thereby renders the accepting . . . town liable for its construction and maintenance." Hersh v. Plonski, 156 N.H. 511, 515 (2007) (quotations omitted). Despite the trial court's use of this phrase, the trial court's findings and rulings demonstrate that it found that Settlers, not the Town, would be responsible for operating and maintaining the new road upon its completion. Specifically, in weighing the potential harm to the plaintiff against the benefits to the Town, the trial court found "no evidence . . . to suggest that Settlers or its successors will cease to maintain . . . [the new road] once it is built." The trial court also considered the amount of yearly maintenance costs that the discontinuance would save the Town. Thus, the trial court's order demonstrates that its use of the phrase "dedicated to public use" did not constitute a finding that Settlers would legally dedicate the new road to the Town, but instead, that it would construct and maintain the new road for public use.

### III. Conclusion

We conclude that the trial court applied the proper legal standard in this case. Furthermore, we conclude that, in applying that legal standard, the evidence supports the trial court's determination that the plaintiff failed to establish that its interests in the continuance of McMillan Lane outweigh the Town's interests in discontinuing the road. We therefore uphold the trial court's decision affirming the Town's vote to discontinue McMillan Lane.

Affirmed.

HICKS and HANTZ MARCONI, JJ., concurred.