Rockingham,
Feb. 1, 1927.

### William F. Summerfield, *Adm'r, v.* Albert S. Wetherell.

In case for negligently causing the death of a child while a foot-traveler at an intersection of streets the plaintiff is not bound to produce direct evidence of the course pursued by the child from which the negligence of the defendant could be inferred; both his course and the defendant's negligence may be found where fairly deducible from the circumstances.

Where a collision between a motor vehicle and a foot-traveler occurs at an intersection of streets and there is no evidence tending to establish that the streets have been legally laid out or in use for twenty years, the provisions of the motor vehicle law regulating the conduct of operators of such vehicles are inapplicable and the common law applies.

Case, for negligently causing the death of the plaintiff's intestate by striking him with an automobile. Trial by jury, with a view of the scene of the accident; and a verdict for the plaintiff. Transferred by *Burque*, J., on the defendant's exceptions to the denial of his motions for a nonsuit and a directed verdict. The facts appear in the opinion.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Doyle & Doyle, Shute & Shute* (*Mr. Paul J. Doyle* orally), for the defendant.

SNOW, J.  The accident occurred at Exeter, on a street running east and west known as Front, at a point opposite and southerly of a fifty foot triangular grass plot formed by a junction of said street with Winter street, which leads off Front in a northeasterly direction, and by a narrow connecting way on the east. A third street, forty-seven feet in width, known as Carroll, enters on Front from a southwesterly direction immediately west of the apex of the grass plot.

The plaintiff's intestate was a boy seven years of age, residing on Carroll street. He attended a school situated on Winter street about four hundred and fifty feet from the northeasterly corner of Carroll. He was accustomed to return from school by Winter street, crossing the grass plot and Front to Carroll.

The three streets at and near their junction constitute a congested residential section of Exeter village. Proulx, the driver of the defendent's Chevrolet car, was a resident of Exeter, and as a witness disclosed familiarity with its streets. The accident occurred on a school day, between three-thirty and four o'clock in the afternoon, the hour when school children might be expected to be returning home. The evidence disclosed the presence upon the sidewalk of Front street near Carroll, at the time of the accident, of at least five other children.

Proulx, the only eyewitness of the accident, was proceeding easterly upon Front street, driving the car as a part of a continuous five-day run to test the consumption of gasoline and oil. He first saw the boy in front of his right mudguard at the instant of impact.

The plaintiff's evidence tended to show that there was a dent or depression, one and seven-eighths of an inch deep, in the surface of the forward end of the mudguard, which was constructed of "sixteen gauge sheet steel," that the guard was "tipped back some," and its fastening to the car slightly cracked. There were marks on the boy's legs at or below the knees and on his back, principally, however, on his hip, where it could be inferred the tip of the mudguard struck him. The back of his head was entirely crushed in.

The immediate place of the collision, as indicated by the blood on the ground, and by the position of the body, was at a point on the roadbed about twenty-six inches from the edge of the grass, and between thirty-five and forty-five feet easterly of the northeast corner of Carroll street. This point was nearly on a line drawn between the termini of the easterly sidewalks upon Winter and Carroll, and, it could be found, approximately on the boy's cus-

tomary course of travel when returning from school. The body lay on the edge of the traveled roadbed close to the grass, or on the edge of the grass.

The sidewalk upon the southerly side of Front has a variable width of between three and four feet, and is separated from the traveled part of the street by a grass strip about six feet wide. Along the grass strip, next to the sidewalk, are a tree, a telephone-pole and a second tree, distant easterly from Carroll in the order named, approximately fifty-five, eighty, and eighty-five feet.

The evidence as to the speed of the car was conflicting. Proulx estimated it at from twelve to fifteen miles per hour. This was confirmed by a witness for the defendant who was traveling in a Ford car in the opposite direction, and who testified he passed Proulx at Carroll street. On the other hand, a witness for the plaintiff, who observed the defendant's car when at a point several hundred feet away, testified that the car was going "extremely fast" — so fast that it was a matter of remark, and that it passed her so quickly, that she could not read the letters upon the side of the car advertising the test run. Another witness who was about one hundred feet west of Carroll street observed the car coming "very fast," that it did not slacken its speed until it ran upon the boy, and that there was a loud squeaking noise when the brakes were applied.

The roadbed was dry. Proulx testified that he must have put his brakes on immediately he struck the boy, and that he stopped within one hundred feet. The plaintiff's evidence tended to show that this distance by actual measurement was one hundred and thirty-five feet. There was evidence that, beginning at a point between fifteen and eighteen feet past the point of collision, the roadbed showed that one wheel dragged for about fifteen feet, and that from that point wheels upon both sides of the car had dragged for a distance of ninety feet. Proulx was an experienced operator and testified that his brakes were working all right. The plaintiff who had had considerable experience in operating automobiles, testified that a car, traveling between twelve and fifteen miles per hour upon a dry road, could be stopped by the application of brakes in good condition within ten to twelve feet "without any wheel-sliding"; that, from his experience, having in mind the distance traveled with the brake application indicated by the marks of the car on the roadbed, and its weight and load, the defendant must have been proceeding, at the time the brakes were applied, at the rate of forty

miles per hour. The defendant submitted evidence that the proximity of the brake pedal and the accelerator in a Chevrolet car were such that the driver might, in the excitement of the accident, have applied his foot to the latter. Proulx had no recollection of making such a misapplication.

As there was no evidence that any of the named streets had been laid out in the mode prescribed by statute, or had been in use for twenty years (P. L., c. 74, s. 1), the provisions of the motor vehicle statutes do not apply. P. L., c. 99, s. 1, cl. xxv. *Dow* v. *Latham*, 80 N. H. 492, 496. The rights of the parties must be determined under the general principles of the common law of negligence.

The defendant contends that the plaintiff failed to establish (1) that the defendant's negligence was the proximate cause of the deceased's injury and (2) that such injury was the cause of his death.

1. The substance of the defendant's first contention is that, since the boy was seen only at the instant of impact, and as there is no direct evidence whence he came, it is mere conjecture that the manner of operating the car had anything to do with the accident, or that the exercise of due care by the driver could have avoided it; that it is as reasonable to suppose that the boy dodged from behind the passing Ford, or a team which it appeared was approaching from the east, or from behind a tree, as to conclude that he came from a direction where his presence could have been discovered in season to have avoided the accident; in other words, that the evidence presents a case of two or more equally possible theories as to the truth of which the jury are not permitted to guess. Reliance is placed upon *Dingman* v. *Merrill*, 77 N. H. 485, 486, and cases there cited, all of which are clearly distinguishable from the instant case. It is sufficient to say that the defendant's position appears to be predicated upon the erroneous assumption that the plaintiff was bound to produce *direct* evidence of the course pursued by the boy from which a want of care by Proulx could be inferred. On the contrary, this fact may be established as an inference, fairly deducible, from circumstances proved in evidence. *Gahagan* v. *Railroad*, 70 N. H. 441, 444; *Deschenes* v. *Railroad*, 69 N. H. 285, 290.

There was direct evidence tending to show the supporting facts, that the accident happened at a time children were returning from school; that the place was approximately in the line of the boy's habitual course of travel; that he was struck upon the back or hips by the right mudguard of the automobile and was thrown easterly

and a little southerly from the line of the travel of the machine. These facts are not conjectural and afforded a basis for an inference that the boy, at the time of the collision, was crossing Front street from the direction of Winter. There was evidence that Proulx, for the last several hundred feet of his approach, except for the obstructions of traffic, had an uninterrupted view of Front street, the grass plot and the approach from Winter street. Even though the jury gave full weight to the defendant's evidence that the Ford car crossed the defendant's at Carroll street, its obstruction to Proulx's vision was limited and momentary. At the time of the collision, the only other vehicle upon the street was the team, which had not reached the point of collision and could not in any event have obstructed the driver's view. Having in mind the convergence of three thickly populated thoroughfares, the hour of day and the presence of school children upon the streets, there was abundant evidence from which it could be found that Proulx was driving at a negligent and reckless rate of speed. If the jury believed this, and that the boy approached the place of the accident from Winter street by way of the grass plot and across Front, they may have found that, notwithstanding the passing Ford, the driver using reasonable care, would have discovered the boy before the instant of impact, and in season to have avoided striking him; and that the accident was the result of such excessive speed, combined with a negligent failure to keep a proper lookout.

The suggestion that the boy may have come from behind a tree upon the southerly side of Front street appears to be based solely upon the claimed fact that his presence in front of the machine was unaccounted for on the evidence. If it were found, however, that the boy thus approached the place of collision, it would not necessarily follow that his injury was due to an unavoidable accident. The evidence tends to show that the nearest tree was southeasterly of the point of collision, a distance of between twelve and twenty feet. The intermediate space was in the plain and uninterrupted view of the driver after he came within two hundred feet of place of impact. So that, even on this hypothesis, it could be found that, by the exercise of ordinary care in the matter of speed and lookout, he would have discovered the boy's presence in season to have averted the accident.

2. The defendant's contention that there was no evidence from which it could be found that the injury to the boy from the collision was the cause of his death requires little consideration. The evi-

dence that his head was crushed by the impact of the mudguard of the defendant's car is uncontradicted. The sufficiency of such a wound to produce death is a matter of common knowledge. That it was the cause of death may be inferred in the absence of evidence of any other cause. *Boucher* v. *Larochelle,* 74 N. H. 433, 434; *Crawford* v. *Railroad,* 76 N. H. 29, 30.

*Exceptions overruled.*

All concurred.