Hillsborough, } No. 3511.
Apr. 3, 1945. }

AMOSKEAG INDUSTRIES, INC.

*v.*

THE BOARD OF MAYOR AND ALDERMEN
OF THE CITY OF MANCHESTER.

*McLane, Davis & Carleton (Mr. Carleton* orally), for the plaintiff.

*Joseph J. Betley,* City Solicitor (by brief and orally), for the defendant.

BURQUE, J. There is ample evidence to support the Court's findings. Manchester is an industrial city. It depends mostly upon the industries located therein for its existence. As stated in the findings plaintiff acquired the area involved in 1936. Prior thereto it had been the property of the Amoskeag Manufacturing Company, which had gone into bankruptcy. It was salvaged

through the efforts of a group of substantial public-spirited citizens who raised the necessary amount ($550,000) to finance the purchase of the property, through the assistance of the Public Service Company of New Hampshire who purchased the water power development for $2,250,000, and of the local banks who financed the balance. The total purchase price was $5,000,000 and the sale was made through the trustee in bankruptcy. When the plaintiff acquired the property, there was no one employed on the premises except watchmen and maintenance workers. The city was then faced with complete liquidation of a plant which had at one time employed when at its peak as many as 16,000 persons and had assessed valuation of $35,500,000. The value of such an asset to a city is apparent and a paramount item in its livelihood and economic life. Were it not for the efforts of the citizens who came forward and saw to it that such a valuable plant should not be lost, but should be developed and again serve the city as its most useful agency in its existence and prosperity, Manchester would have found itself in dire circumstances. Is it then of public necessity that the streets petitioned for should be laid out and the whole area covered thereby become a part and parcel of a very important portion of the city and located in the heart and adjacent to the business section thereof? We think an affirmative answer is mandatory.

Police protection is imperative. Regulation of traffic and protection of property is required. So is fire protection, lighting, sewerage, scavenger, snow removal service, etc. These services, normally a public function, cannot be supplied unless the area is served by public highways. *Sherburne* v. *Portsmouth,* 72 N. H. 539, 542; *Dow* v. *Latham,* 80 N. H. 492, 496; *Summerfield* v. *Wetherell,* 82 N. H. 513; *Heilman* v. *Whalley,* 90 N. H. 215. It is not fair, nor is it equitable that plaintiff, a liquidating concern which has done so much for the welfare and advancement of the merchants, business men, banking institutions and other resident taxpayers of the city be asked and required to carry the burden of giving the necessary services so vital to the continued existence and prosperity not only of the industries involved but of the city as a whole. As it appears in the findings, due to assessed valuations of these industries a very substantial return in the form of taxes collected inures to the benefit of the city itself. Such returns will more than offset the cost to be incurred in the laying out of the streets and the furnishing of the necessary protection and services involved as the result of these streets becoming public highways. It is not only a question of cost,

as the city argues, it is a question of public need. Certainly the number of concerns and employees directly served are not the only ones to be considered. What about the rest of the population also directly benefited by the activities in the mill yard so called? Are the merchants, (wholesalers and retailers), banking institutions, property owners (no doubt including many of the employees concerned) and taxpayers in general and the substantial taxpayers in particular who formed the plaintiff company to be left out of the picture? The laying out of these streets will constitute a complete highway system within an already concentrated and highly-developed industrial area, streets which already take care of heavy and public traffic, estimated "to be a third of the 216 miles of city streets," and described as a "business center same as you have on the Main Street." The chairman of the board of assessors in answer to the following question: "Is there any other section of Manchester which compares in any way with the Amoskeag Mill Yard for the concentration and bringing together of taxable property?" answered, "Oh, no, no. Of course not. It is a great relief to see them coming as they are down there. It is very good." The chief of police says it should be patrolled and subjected to traffic regulations, and the fire chief says it should have adequate fire protection. In view of all these considerations there can be no doubt that a finding of public necessity is warranted. It being so a decree to lay out the highways has been properly entered. *Dudley* v. *Cilley*, 5 N. H. 558, 562; *Dudley* v. *Butler*, 10 N. H. 281; *Goodwin* v. *Milton*, 25 N. H. 458, 472; *Brown* v. *Brown*, 50 N. H. 538, 553. See also *Petition of Strafford*, 14 N. H. 30, 31; *Gurnsey* v. *Edwards*, 26 N. H. 224, 229.

*Exceptions overruled.*

All concurred.