Carroll
No. 88-412

ROCKHOUSE MOUNTAIN PROPERTY OWNERS ASSOCIATION *& a.*

v.

TOWN OF CONWAY

May 4, 1990

*Cooper, Fauver & Deans P.A.*, of North Conway (*Randall F. Cooper* and *Kenneth R. Cargill* on the brief, and *Mr. Cooper* orally), for the plaintiffs.

*Upton, Sanders & Smith*, of Concord (*Gilbert Upton* and *Russell F. Hilliard* on the brief, and *Mr. Hilliard* orally), for the defendant.

THAYER, J.  The Town of Conway (the town or the defendant) appeals an order of the Superior Court (*O'Neil*, J.) approving the recommendation of the Master (*Robert E. Hinchey*, Esq.) that occasion exists for the town to lay out a roadway system pursuant to RSA

231:28–33 (1982 and Supp. 1989) in the Rockhouse Mountain Development, in Conway. We find that the burden on the town resulting from the requested layout would outweigh any benefit the public would receive; accordingly, we reverse the trial court's order.

This case has already been before us in *Rockhouse Mountain Property Owners Association v. Town of Conway*, 127 N.H. 593, 503 A.2d 1385 (1986), where we affirmed the dismissal of counts three and four, seeking damages and mandamus. In this appeal, the town challenges the trial court's decision on counts one and two, seeking a layout of roads. The relevant facts are as follows. *See also Rockhouse Mountain supra.* The plaintiffs are an incorporated association of property owners in a Conway subdivision known as the Rockhouse Mountain Development (Rockhouse Mountain), together with individual lot owners residing and/or owning property in that subdivision. Rockhouse Mountain was developed by Great Northern Land Corporation (Great Northern), which obtained approval for the subdivision from the Conway Planning Board in 1971. The planning board understood that the roads were to be private, and purchasers of the lots were told that the developer would maintain the roads in the subdivision for an annual fee. There are approximately 197 one-half acre lots in Rockhouse Mountain, and 2.46 miles of roads. Twelve lots are owned by Conway residents, approximately sixteen to eighteen are owned by developers, and 135 of the remaining lots are owned by out-of-state residents. Twenty-two lots had homes on them at the time of trial, and only eight or nine of these homes did not front on public roads. When the plaintiffs petitioned the town to take over the private roads, no school-age children resided within Rockhouse Mountain. It is unclear from the record whether or not school-age children currently live there.

In 1979, Great Northern notified the lot owners that, because it was having difficulty collecting its annual fees, it had decided to withdraw from further maintenance of the roadways. During August of 1982, several lot owners sent the Conway selectmen a petition pursuant to RSA 231:8, requesting that the town lay out roads over all rights of way in the development without cost to the abutting landowners. RSA 231:8 states:

"Selectmen of a town, upon petition, may lay out any new class IV highway not financed in whole or in part with federal aid highway funds, and class V or VI highway or alter

any such existing highway within their town for which there shall be occasion."

Alternatively, they requested that the town lay out roads over the development's two principal thoroughfares, Gotzens Road and Brenner Drive, subject to betterment assessments against the abutters. The betterment assessment statutory scheme enables town selectmen, in response to a petition, to lay out roads over existing rights-of-way, and to assess the abutters for the cost. RSA 231:28–29 (1982 and Supp. 1989). RSA 231:29 specifically provides:

"The cost of constructing, reconstructing or repairing such highways, streets, roads or traveled ways shall be assessed by the selectmen against the owners of property abutting or served by such facilities in an amount not exceeding the entire cost of constructing, reconstructing or repairing the same, and the amount so assessed upon each such owner shall be reasonable and proportional to the benefits accruing to the land served. Said assessments may be payable in one year or payment may be prorated over a period not to exceed 10 years, in the discretion of the appropriate governing board. . . ."

On September 28, 1982, the selectmen denied each request, stating that the existing roads did not meet Conway's road specifications, and that the cost of betterment assessments to improve the roads and bring them up to town standards would be disproportionate to any value the abutters would receive, in some cases even exceeding the assessed value of the lots benefited. The selectmen explained that the high cost of construction outweighed the benefit to the few people who would be served by the public roads, and that these people would use the roads only infrequently. They also based their denial on the fact that the subdivision's roads "do not interconnect or improve the road system of the Town of Conway generally."

In September of 1983, some of the property owners filed a new petition with the selectmen in which they requested that the town lay out only a portion of Brenner Drive subject to a betterment assessment. On November 7, 1983, the selectmen denied the petition, explaining that only four houses would be served by the road, and that the estimated cost would be too burdensome to the individual abutters. The selectmen also stated: "More importantly, however, we fail to find valid public benefit to the rest of the Town. The road does not connect with anything on the southeastern terminus, thus not up-

grading the Town's road system generally." In response to these decisions by the selectmen, the plaintiffs filed the present lawsuit, claiming in counts one and two that the selectmen acted illegally in denying their requests for the layout, respectively, of Brenner Drive and of all of the roads in the development.

During the hearing before the master, evidence was introduced indicating that the cost of upgrading Brenner Drive to conform to town standards, with the exception of the road's grade, which could never be brought into conformity, would range from $137,500 to $217,500. The cost of upgrading the entire roadway system, with the exception of the roads' grades, would range from $735,373 to $1,162,468 to bring the roads up to town standards, and from $553,000 to $663,000 to bring the roads up to State standards. The town subdivision regulations require that prior to the town's acceptance of a road, there must be at least $500,000 of valuation per mile and at least 60% development. *See* CONWAY CODE § 131-83. While evidence was introduced that the valuation per mile in this case may exceed $500,000, there was also testimony that the development along the roads is far below the 60% requirement.

Following the hearing, the master recommended and the superior court ordered that occasion exists for the layout of public roads throughout Rockhouse Mountain pursuant to RSA 231:28–33 (1982 and Supp. 1989). In reaching his recommendation, the master balanced the public need for the roadways against the burden the roads would impose on the town. The master found that "a substantial number of lots are served by virtually impassible [sic] roads. Fire and police protection plus the necessary school bus service would . . . be substantially impossible." In concluding that there existed "a reasonable necessity" for the layout of public roads, the master determined that the burden on the town was not onerous when compared with the plaintiffs' need for the roadway system.

■■ While RSA 231:8 indicates that the selectmen may lay out roads for which there is occasion, RSA 231:28–33 (1982 and Supp. 1989) merely provides that the selectmen may lay out roads pursuant to a petition and may assess the abutters to recoup the cost thereof. The betterment assessment statute does not indicate whether occasion must exist before the town takes over roads under that statute; however, both parties assume that it must. Therefore, we will limit our review to the issue argued by the parties; *i.e.*, whether or not occasion exists for the public layout of roads pursuant to the better-

ment statute. "Occasion" for the layout of public roads exists if the public interest requires the town's acceptance of the roads. *Jackson v. Ray*, 126 N.H. 759, 762, 497 A.2d 1191, 1194 (1985). This determination involves balancing the public need for the roads against the burden the roads would impose upon the town. *Locke Dev. Corp. v. Barnstead*, 115 N.H. 642, 643, 349 A.2d 598, 599 (1975) (citing *Amoskeag Industries v. Manchester*, 93 N.H. 335, 41 A.2d 917 (1945)). The superior court's conclusion that occasion exists for the public layout of roads must be supported by "*some* evidence," *see Waisman v. Manchester*, 96 N.H. 50, 55, 69 A.2d 871, 874 (1949) (quoting *Thompson v. Conway*, 53 N.H. 622, 627 (1873)) (emphasis in original), and we will not disturb its determination in the absence of gross mistake or fraud, *see Jackson v. Ray*, 126 N.H. at 762, 497 A.2d at 1193–94 (citing *Brodeur v. City of Claremont*, 121 N.H. 209, 211, 427 A.2d 509, 510 (1981)).

Based on the evidence presented during the hearing, we hold that the superior court's decision to lay out roadways was the product of gross mistake. We do not disagree with the master's finding that several lots are served by virtually impassable roads. However, noticeably absent from his recommendation is any finding of the public need for these roads, which is necessary before determining that occasion for their layout exists. Evidence was introduced that many of these roads are dead-end roads, that they do not interconnect with other town streets, and that only eight or nine houses do not already front on public roads. Although the master apparently relied on the fact that school buses would be unable to travel along the subdivision's roads in the condition that they are currently in, no evidence was introduced that any school-age children reside in Rockhouse Mountain.

While there is a paucity of cases discussing the factors supporting the determination that occasion exists for the laying out of public roads, the cases addressing this issue are instructive, and their facts distinguishable from those of the present case. In *Amoskeag Industries v. Manchester*, 93 N.H. 335, 335–38, 41 A.2d 917, 918–19 (1945), the question was whether the City of Manchester should lay out roads in a heavily industrialized area in the center of the city. In holding that ample evidence existed to support the lower court's findings that occasion existed for the laying out, the court discussed the public need for the roads in question. The court considered the substantial amount of taxes that would be collected, as well as the num-

ber of employees and businesses that would be served. *Id.* at 338–39, 41 A.2d at 919–20. Additionally, the court found that the laying out of these roads would benefit the rest of the city's population by alleviating the heavy traffic flow on other streets and providing an alternative course for traveling through the city. *Id.* at 339, 41 A.2d at 919.

The facts of *Locke Development Corporation v. Town of Barnstead*, 115 N.H. at 643–44, 349 A.2d at 599–600, in which the court found that the commissioner's determination that occasion existed for the layout of public roads was warranted by the record, are more like those of the case before us because roads in a housing development were at issue; however, the similarity ends there. While only about 11% of the lots in Rockhouse Mountain have homes on them, 24% of the lots in the Locke Development, or 291, had houses either built or in the process of being built on them. *Id.* at 643, 349 A.2d at 599. Also, about twenty-nine children in the Locke Development attended the town's schools, *id.*, whereas there is no evidence that there are any school-age children in Rockhouse Mountain. Although there is no evidence of the amount of taxes the defendant collects from the plaintiffs and other lot owners, there was evidence in *Locke Development Corporation* that the town collected about 41% of its taxes from the property owners of the Locke Development. *Id.* Additionally, compared with evidence presented in the case before us that the subdivision's roads do not interconnect with other town roads, evidence was introduced in *Locke Development Corporation* that there was a need of the development's roads for public convenience. *Id.* at 644, 349 A.2d at 600.

Roads passing through a housing development were also at issue in *Jackson v. Ray*, 126 N.H. at 760, 497 A.2d at 1192, a case in which we upheld the master's finding that occasion did not exist for the laying out of public roads. In that case, while the town had 600 to 650 residents, only four to seven people resided in the development, and between zero and fifty vehicles used the development roads daily. *Id.* at 762, 497 A.2d at 1194. The streets did not meet the State standards for town roads, and the master in that case found that it would cost between $6,858 and $8,908 to bring the roads into compliance. *Id.* at 763, 497 A.2d at 1194.

Evidence was not introduced concerning the number of people living in Conway, but there was testimony that "probably less than five" people were living in Rockhouse Mountain year-round when the petitions were filed with the selectmen. Moreover, although there is no

evidence of the number of cars traveling along the Rockhouse Mountain roads, there was testimony that the roads are not heavily traveled, and that some are traveled infrequently, if at all.

After comparing the facts of the case at bar with the facts of other cases in which occasion for the layout of public roads was at issue, it is clear that the burden to the defendant of laying out the roads in Rockhouse Mountain far outweighs any benefit the public would receive. The plaintiffs presented an expert who testified that if the defendant laid out the roads at its own expense, *see* RSA 231:8, the town would recognize a positive revenue flow after fourteen years. The expert testified further that if the town laid out the roads pursuant to the betterment assessment statute, it would recognize a positive revenue flow after two to four years. However, these figures were based on certain assumptions that have not been proven and are highly speculative. For example, the plaintiffs' expert assumed that changing the roads from private ways to public roads would cause the land values of the development to increase twenty-five to fifty percent. He also assumed that the lots, each of which had been assessed at between $2,700 and $6,000, would be reassessed during an overall town reassessment at values ranging from $10,000 to $16,000, without regard to whether the roads remained private or became public. Finally, he based his figures on the assumption that it would take twenty years for all of the lots in the subdivision to be developed if the town took over the roads, while it would take forty years for the development to be completed if the roads remained private. However, as the defendant points out, the subdivision had been in existence for seventeen years by the time of the hearing, and only twenty-two to twenty-five lots had structures on them. At the current rate of development, it is difficult to determine with any certainty when, or whether, the entire subdivision will be fully developed.

It is important to note that in the cases discussed above, the betterment assessment statute was not at issue, and in the cases where occasion was found to exist, the towns were obligated to fund the entire road project without assessing the abutters. The plaintiffs argue that, unlike the cases where the town has to expend its own money for the laying out, *see* RSA 231:8, the defendant in this case will be able to assess the abutting landowners for the cost of improving the roads, and the only ongoing burden the town will bear is the cost of maintaining the roads. *See* RSA 231:28–33 (1982 and Supp.

1989). Moreover, the plaintiffs argue, the town will receive a positive revenue flow after two to four years under the betterment assessment procedure, which will cover the cost of maintaining the Rockhouse Mountain roads. However, as we discussed earlier, the assumptions that the plaintiffs' expert relied on in concluding that the town would recognize a positive cash flow are highly speculative.

■ Based on the facts of this case, we hold that the burden on the town would be too onerous and the benefit to the public too slight to require the town to lay out the roads in Rockhouse Mountain, even pursuant to the betterment assessment statute. The town's assessment of the individual abutters to cover the cost of the laying out may, in some cases, equal or exceed the assessed value of the abutters' undeveloped lots. In these cases, the town risks the lot owners' defaulting on their payments, with the result that the town would be forced to take action to recover its costs. If the town is required to enforce its lien on the lots, but is unable to-recover the amounts due, it will have to spend more of its own funds to maintain these now-public roads for the benefit of only a handful of people. *See* RSA 231:33 (after betterments have been completed, town must maintain roads without further assessment of abutters). The facts of this case differ from the facts of *Locke Development Corporation*, where 291 of the lots were either developed or in the process of being developed, children attended the town's schools, 41% of the town's tax revenue came from the development's residents, and the development's roads were necessary for public convenience. 115 N.H. at 643–44, 349 A.2d at 599–600. Moreover, the facts of this case differ from the facts of *Amoskeag Industries*, where the roads were in the heart of the city and would serve several businesses and employees, as well as the rest of the city's population, who would be able to use the roads to travel about the city. 93 N.H. at 338–39, 41 A.2d at 919. For all of the above reasons, we hold that the trial court erred in ruling that occasion exists for the town to lay out a roadway system in the Rockhouse Mountain Development.

*Reversed.*

BROCK, C.J., concurred in the result only; the others concurred.