Hillsborough-southern judicial district
No. 2007-559

GREEN CROW CORPORATION

v.

TOWN OF NEW IPSWICH

Argued: February 13, 2008
Opinion Issued: May 30, 2008

*Wiggin & Nourie, P.A.*, of Manchester (*Gregory E. Michael* and *Patricia M. Panciocco* on the brief, and *Mr. Michael* orally), for the plaintiff.

*Tower, Crocker & Mullins, P.A.*, of Jaffrey (*Thomas P. Mullins* on the brief and orally), for the defendant.

BRODERICK, C.J. This case comes before us on an interlocutory appeal without ruling, *see* SUP. CT. R. 9, from the Superior Court (*Groff*, J.). It poses two questions:

> (1) Does RSA 231:28 require a petitioner requesting permission from the Selectmen to upgrade and reclassify an existing Class VI road to Class V standards to show occasion exists for the layout?

> (2) If the Court finds that the occasion analysis applies to the upgrade and reclassification under RSA 231:28, may the Selectmen consider as part of the occasion analysis the anticipated impact associated with the development that may result from the upgrade of the Class VI road to Class V status?

We answer the first question in the affirmative, the second in the negative, and remand.

The following facts are taken from the interlocutory appeal statement, *see Alonzi v. Northeast Generation Servs. Co.*, 156 N.H. 656, 658 (2008),

unless otherwise noted. The plaintiff, Green Crow Corporation, submitted a petition pursuant to RSA 231:28 (1993) to the board of selectmen of the defendant, the Town of New Ipswich, to conditionally lay out and reclassify as a class V highway certain portions of Binney Hill Road, a class VI highway. Specifically, it requested approval to upgrade the highway in three phases totaling approximately 4,100 linear feet, at its own expense, conditioned upon "obtaining final, unappealable approvals to its satisfaction from the Town of New Ipswich Planning Board for a three (3) phase cluster subdivision to be located along and off the Road." According to a map appended to the plaintiff's brief, as well as the minutes of the board of selectmen's June 20, 2006 hearing, the phased development would involve construction of approximately 130 new homes. The defendant denied the petition, finding that the plaintiff failed to establish that a proper "occasion" existed for the requested highway upgrade and reclassification. *See* RSA 231:8 (1993). The plaintiff appealed to the superior court. *See* RSA 231:34 (1993); *Wolfeboro Neck Prop. Owners Assoc. v. Town of Wolfeboro*, 146 N.H. 449, 452 (2001). There, the plaintiff contended that the occasion requirement under RSA 231:8 did not apply to its petition, and, that even if it did, the defendant was not permitted to consider anticipated impacts associated with potential development that could result from the upgraded and reclassified highway. The superior court transferred both questions of law to this court without ruling.

Both questions require statutory interpretation. Our rules of statutory construction are well-settled:

> We are the final arbiter of the meaning of a statute as expressed by the words of the statute itself. We look to the plain and ordinary meaning of the words used in the statute and will not examine legislative history unless the statutory language is ambiguous, consider what the legislature might have said, or add words not included in the statute. We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections. The legislature will not be presumed to pass an act leading to an absurd result and nullifying, to an appreciable extent, the purpose of the statute.

*Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511-12 (2006) (citations omitted). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Town of Hinsdale v. Town of Chesterfield*, 153 N.H. 70, 73 (2005) (quotation omitted).

## I

We first address whether the conditional layout provision, RSA 231:28, incorporates the occasion requirement in RSA 231:8. RSA 231:28, entitled "Conditional Layout for Existing Private Rights-of-Way or Class VI Highways," provides, in pertinent part:

> Whenever, *pursuant to the provisions of this chapter*, the selectmen receive a petition to lay out roads over existing private rights-of-way or to lay out a class V highway over an existing class VI highway *and* such private right-of-way or class VI highway does not conform to construction standards and requirements currently in effect in the town, *the selectmen may conditionally lay out roads upon compliance with betterment assessments* as provided in this section and in RSA 231:29-33. Prior to commencement of conditional layout, however, a public hearing shall be held . . . at which hearing details of the proposed construction, reconstruction or repairs, and the estimated costs thereof shall be presented by the selectmen. . . . If a highway is so laid out, the selectmen may construct, reconstruct, repair or cause to be constructed, reconstructed or repaired such highways, streets, roads, or traveled ways to conform in every way with the highway or street construction standards and regulations previously established by the town. The betterment assessments shall be assessed under the provisions of RSA 231:29.

RSA 231:28 (emphasis added) ("conditional layout provision"). Betterment assessments reflect "[t]he cost of constructing, reconstructing or repairing such highways, streets, roads or traveled ways." RSA 231:29 (1993). They may be paid over time by the beneficiaries of the upgraded road, *id.*, and create a lien on their lands until paid in full, RSA 231:30 (1993). After the approved betterments have been completed, the Town is responsible for "all further repair and maintenance" of the highway at issue. RSA 231:33 (1993); *but see* RSA 231:23 (1993) ("Whenever a highway will be of special advantage to any individual the selectmen may require him to bear such portion of land damages and expenses of constructing and maintaining it . . . .").

The betterment assessment provisions fall within a subpart of RSA chapter 231 entitled "Laying Out Highways." *See* RSA 231:1-:33 (1993 & Supp. 2007). Also within that subpart is RSA 231:8, entitled "Petition," which provides:

> Selectmen of a town, upon petition, may lay out any new class IV highway not financed in whole or in part with federal aid highway

funds, and class V or VI highway or alter any such existing highway within their town *for which there shall be occasion.*

RSA 231:8 (emphasis added).

Green Crow argues that the conditional layout provision, RSA 231:28, grants specific and detailed authority to the board of selectmen and does not incorporate the occasion requirement under RSA 231:8. It contends that RSA 231:28 stands alone, and if its requirements are satisfied, a petitioner may secure a conditional layout. The Town argues, however, that the plain language of RSA 231:28, as well as the structure of RSA chapter 231 as a whole, evinces a legislative intent to incorporate the occasion requirement of RSA 231:8 into the conditional layout provision of RSA 231:28. We agree with the Town.

The conditional layout provision, RSA 231:28, extends authority for selectmen to lay out a highway conditioned upon compliance with betterment assessments. A prerequisite to the selectmen's ability to exercise this authority, however, is that "pursuant to the provisions of . . . chapter [231], the selectmen receive a petition to lay out roads over existing private rights-of-way or to lay out a class V highway over an existing class VI highway." RSA 231:28. We emphasize that RSA 231:28 explicitly requires that a petition be submitted to the selectmen "pursuant to the provisions of [chapter 231]." Any reasonable reading of this language incorporates the "Petition" provision of RSA chapter 231; namely, RSA 231:8.

Moreover, RSA 231:28, by itself, provides no impetus to the selectmen to grant a conditional layout. It simply states that "the selectmen *may* conditionally lay out roads upon compliance with betterment assessments . . . ." RSA 231:28 (emphasis added). No parameters, however, are identified within the provision itself to guide the exercise of the discretionary authority to grant the conditional road layout. Inclusion of the petition provision, RSA 231:8, establishes necessary guidance for the granting of a requested road layout, because it provides that the selectmen may lay out the petitioned roadway "for which there shall be occasion." RSA 231:8. In other words, occasion operates as the framework within which the selectmen are to consider granting a conditional layout under RSA 231:28.

In addition, the phrasing of RSA 231:28 stands in stark contrast to the language the legislature chose to use in RSA 231:22, entitled "Previously Discontinued Highway." That provision provides, in pertinent part:

*Notwithstanding any other provisions of this chapter to the contrary,* any owner who has no access to his land by public highway may petition the selectmen to layout, subject to gates and bars, a highway located where any previously discontinued highway was located. . . . Unless written objection to such layout

is filed with the selectmen within 60 days after the posting and mailing of such notice, *the highway shall be laid out*, subject to gates and bars, in the location in which it previously existed *if the selectmen find that the petitioner in fact has no other access to his land by public highway.* . . . In the event written objection to such layout is filed with the selectmen prior to the expiration of said 60-day period, the petition shall be deemed to be a petition filed for the layout of a new class IV, V or VI highway *in accordance with RSA 231:8, and all the provisions of this chapter shall be applicable thereto.*

RSA 231:22 (emphasis added). The emphasized introductory language makes plain that RSA 231:22 stands alone, exclusive of other contrary provisions of RSA chapter 231, including RSA 231:8 and its occasion requirement. Furthermore, RSA 231:22 *requires* the selectmen to lay out the proposed roadway if no timely objection to the petition is filed and "the selectmen find that the petitioner in fact has no other access to his land by public highway." RSA 231:22. If, on the other hand, a timely objection is filed, the selectmen are directed to treat the otherwise exempted petition as one filed in accordance with RSA 231:8, the petition provision. *See* RSA 231:22. Within the confines of the provision itself, therefore, the standards by which the selectmen must abide in granting the requested road layout are identified.

Had the legislature intended to except conditional layouts under RSA 231:28 from the occasion requirement of RSA 231:8, it could have used language similar to RSA 231:22. Based upon the foregoing, we conclude that RSA 231:28 incorporates the occasion requirement of RSA 231:8. Accordingly, a petitioner requesting permission from the board of selectmen to upgrade a class VI road to a class V road must show that occasion exists for the layout of that road.

## II

We next consider whether the occasion requirement of RSA 231:8 permits the board of selectmen, or the superior court upon *de novo* review, to consider "the anticipated impact associated with the development that may result from the upgrade of the Class VI road to Class V status." "Occasion" is not defined under RSA chapter 231. "Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases . . . ." *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003) (quotation omitted).

## A

█ We have considered the meaning of occasion in several prior opinions, *Rodgers Dev. Co. v. Town of Tilton*, 147 N.H. 57, 59 (2001), and have determined that "[o]ccasion for the lay out of public roads exists if the public interest requires the town's acceptance of the roads," *Wolfeboro*, 146 N.H. at 452 (quotation omitted). Assessing occasion involves an equitable balancing of competing interests. *See id.* Specifically, the selectmen must "balanc[e] the public need for the roads against the burden the roads would impose upon the town." *Rockhouse Mt. Property Owners Assoc. v. Town of Conway*, 133 N.H. 130, 134 (1990).

██ We have outlined a two-step process for assessing occasion:

> The first step is to balance the public interest in the layout against the rights of the affected landowner. If the rights of the affected landowner outweigh the public interest in the layout, the layout is not justified and there is no occasion for it. If, however, the public interest justifies the taking of the land without the landowner's consent, the second step is to balance the public interest in the layout against the burden it imposes upon the town. If the balancing required by the second step favors the public interest, occasion for the layout exists.

*Rodgers*, 147 N.H. at 59-60 (citations omitted). In prior cases, we have identified the following factors, among others, that the trial court may consider in its assessment of the "public interest" prong: integration within an existing road system, *Rockhouse*, 133 N.H. at 134; *Amoskeag Industries v. Manchester*, 93 N.H. 335, 339 (1945); ease of existing traffic flow, *Amoskeag Industries*, 93 N.H. at 339; *Rockhouse*, 133 N.H. at 135; improvement to convenience of travel, *Locke Dev. Corp. v. Barnstead*, 115 N.H. 642, 644 (1975); *Amoskeag Industries*, 93 N.H. at 339; facilitation of transportation for existing school children, *Rockhouse*, 133 N.H. at 134-35; *Locke*, 115 N.H. at 644; improved accessibility to business district and employment centers, *Amoskeag Industries*, 93 N.H. at 338-39; improved accessibility for fire, emergency and police services, *Locke*, 115 N.H. at 644; *Amoskeag Industries*, 93 N.H. at 338; benefit to significant portion versus small fraction of town tax base or year-round residents, *Locke*, 115 N.H. at 643; *Jackson v. Ray*, 126 N.H. 759, 762 (1985); *Rockhouse*, 133 N.H. at 135; and anticipated frequency of road use, *Rockhouse*, 133 N.H. at 135-36; *Jackson*, 126 N.H. at 762.

When examining the "town burden" prong, our cases have looked almost exclusively at anticipated construction and ongoing maintenance costs pertaining to the road itself. *See Rodgers*, 147 N.H. at 61; *Rockhouse*, 133

N.H. at 136-37; *Jackson*, 126 N.H. at 763. In *Rockhouse*, we also considered the financial risk to the Town in the event of a default on the payment of betterment assessments. *Rockhouse*, 133 N.H. at 137. Notably, however, in these prior cases the subdivision or development of the land had already occurred before a petition to lay out or upgrade a roadway was pursued. *See, e.g., Rockhouse*, 133 N.H. at 131-32; *Locke*, 115 N.H. at 643. Thus, the impact on the town's infrastructure due to municipal growth, such as increased costs related to school, fire, police and emergency systems, had already occurred. Here, we are faced with the circumstance of a developer seeking to upgrade a roadway to facilitate the subdivision and development of its land adjoining the roadway.

B

Green Crow contends that when reviewing the burden the requested highway upgrade and reclassification would cause the Town, the board of selectmen considered land use and municipal growth issues, and thereby improperly acted in the capacity of the planning board. It asserts that when assessing the "town burden" prong, the board of selectmen should confine its analysis to the impact of the highway itself, and, particularly, to the burden of anticipated road maintenance and repair. *See* RSA 231:23; :29-:33. On the other hand, the defendant argues that in order to properly balance the public interest and the town burden, the board of selectmen, and thus the superior court on *de novo* review, should be able to consider the impacts associated with potential future development. Specifically, it identifies the following factors as pertinent to assessing "town burden": increased burden on the Town's schools, fire, emergency and police systems; environmental impacts; and noncompliance with the Town's Master Plan.

In *Rodgers*, we faced a circumstance similar to the one before us; that is, a petition for a road layout was sought prior to the actual development of the land itself. *Rodgers*, 147 N.H. at 57. Specifically, a developer petitioned the town's board of selectmen for a conditional layout of two roads on existing rights-of-way over land owned by other commercial entities in order to facilitate its plans to open a large supermarket on its property. In reviewing the propriety of the finding of occasion, we identified the following factors assessed by the superior court in relation to the public interest prong: "keeping large commercial development in a particular section of town" and "the inability to develop [the] particular parcel for high-traffic retail use absent the layout." *Rodgers*, 147 N.H. at 60. When reviewing the town burden prong, we noted that the superior court considered, among other things, that "the increased development potential accruing to the [supermarket] site would not present a burden to the school

system as would a residential development." *Id.* at 61. We acknowledge that some factors examined by the superior court in *Rodgers* are akin to considering municipal growth impact issues in the context of the occasion analysis. The legal question of what factors are relevant to the occasion analysis, however, was not before us in that case. We decided *Rodgers* by reviewing whether the superior court's finding of occasion was supported by "some evidence," *id.* at 60, with the underlying assumption that the evidence it considered was proper. *See also Rockhouse*, 133 N.H. at 133 (court decided case based upon assumption by both parties that occasion requirement was incorporated within betterment assessment statute). Accordingly, the *Rodgers* case does not guide us in the question of law directly before us now.

## C

Because occasion is not statutorily defined, we reviewed the portion of RSA chapter 231 entitled "Laying Out Highways," *see* RSA 231:1-:33, in its entirety to discern whether the legislature intended to authorize a board of selectmen to consider associated impacts that may be caused by land development should it grant a requested road layout under that chapter. *See Weare Land Use Assoc.*, 153 N.H. at 511. We conclude, however, that the legislative intent on this issue is not readily apparent within the confines of RSA chapter 231. After examining the comprehensive planning and zoning statutory scheme designed by the legislature under Title LXIV, it is clear that the legislature did not intend for the board of selectmen, or the superior court on *de novo* appeal, to undertake the sort of analysis advocated by the Town when evaluating whether occasion exists for a requested road layout or upgrade under RSA 231:8.

Title LXIV consists of RSA chapters 672 through 677, which delineate in detail the process by which a municipality may manage land use planning and zoning within its boundaries. The legislature declared, *inter alia*, that:

> I. Planning, zoning and related regulations have been and should continue to be the responsibilities of municipal government;

> II. Zoning, subdivision regulations and related regulations are a legislative tool that enables municipal government to meet more effectively the demands of evolving and growing communities; [and]

> III. Proper regulations enhance the public health, safety and general welfare and encourage the appropriate and wise use of land[.]

RSA 672:1 (Supp. 2007).

Within this scheme, the legislature has provided a variety of mechanisms for a municipality to utilize in conducting its land use planning, including controlling growth and managing the impact upon infrastructure. For example, the local legislative body, which is the basic form of government utilized by a municipality (such as a mayor or town meeting), RSA 672:8 (1996), may adopt a zoning ordinance, RSA 674:16 (Supp. 2007), which may include innovative land use controls, RSA 674:16, II. A municipal zoning ordinance must be designed to regulate and restrict numerous land use features, including "the density of population in the municipality," RSA 674:16, I(c), and must give "reasonable consideration to, among other things, the character of the area involved and its peculiar suitability for particular uses, . . . conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality," RSA 674:17, II (Supp. 2007). It also can include mechanisms that regulate and control the timing of development. RSA 674:16, III. Such controls can include assessment of an impact fee, RSA 674:21, I(g) (Supp. 2007), which is defined as "a fee or assessment imposed upon development, including subdivision, . . . to help meet the needs occasioned by that development for the construction or improvement of capital facilities owned or operated by the municipality," including, among other things, "public road systems and rights-of-way," "public school facilities," and "public safety facilities." RSA 674:21, V (Supp. 2007).

A zoning ordinance may not be adopted, however, until after the adoption of "mandatory sections of the master plan." RSA 674:18 (Supp. 2007). A municipality's master plan guides "the development of the municipality," RSA 674:1, I (1996), and as set forth by the legislature:

> The purpose of the master plan is to set down as clearly and practically as possible the best and most appropriate future development of the area under the jurisdiction of the planning board, to aid the board in designing ordinances that result in preserving and enhancing the unique quality of life and culture of New Hampshire, and to guide the board in the performance of its other duties in a manner that achieves the principles of smart growth, sound planning, and wise resource protection.

RSA 674:2, I (Supp. 2007). The legislature specifically delineated various aspects of community development for consideration and inclusion within the master plan, such as transportation, community facilities, economic development, natural resources, and regional concerns. RSA 674:2, III (Supp. 2007). Furthermore, a municipality may regulate subdivisions through adoption of regulations that incorporate a variety of criteria as

prerequisites to landowners subdividing their land. RSA 674:36 (Supp. 2007); *see also* RSA 672:14 (1996) (definition of "subdivision"). For example, subdivision regulations may:

> (a) Provide against such scattered or premature subdivision of land as would involve danger or injury to health, safety or prosperity by reason of the lack of water supply, drainage, transportation, schools, fire protection, or other public services, or necessitate the excessive expenditure of public funds for the supply of such services; [and]

> (b) Provide for the harmonious development of the municipality and its environs[.]

RSA 674:36, II.

In addition to creating various mechanisms for municipalities to govern local land use under Title LXIV, the legislature has established diverse bodies to effectuate them. *See* RSA 672:8 ("local legislative body" includes town meeting); RSA 672:6, I (1996) ("local governing body" includes board of selectmen); RSA 672:7 (1996) ("local land use boards" include a planning board and zoning board, among other bodies). Each body is granted different authority and a distinct role in the task of regulating land use development and growth within the respective community. For example, the local legislative body creates the municipality's zoning ordinance. RSA 674:16. The planning board's duties include devising the master plan, *regulating the subdivision of land and regulating site plan review. See* RSA 674:1 (1996) (master plan); RSA 674:35, :36 (Supp. 2007) (subdivision regulation); RSA 674:43, :44 (Supp. 2007) (site plan). The zoning board of adjustment has the power to grant variances and exceptions to the zoning regulations, RSA 674:13 (1996), and the board of selectmen may be extended the authority to grant conditional or special use permits, RSA 674:21, II (Supp. 2007).

A significant portion of the responsibility and tasks of careful and wise land use planning falls to the planning board. While the duty of creating the municipality's zoning ordinance, as well as various local land use boards, lies within the purview of the local legislative body, RSA 674:16; RSA 673:1 (Supp. 2007), the legislature has identified the planning board as the central authority for globally managing municipal land use planning and growth control. *See* RSA 674:1 (master plan); RSA 674:35, :36 (subdivision regulation); RSA 674:43, :44 (site plan review); RSA 674:21, V(d) (impact fees shall be assessed when planning board approves subdivision plat or site plan or when building permit granted); RSA 674:21, V(j) (exaction for off-site improvements shall be assessed when planning board approves development); RSA 674:21, II (Supp. 2007) (even if innovative land use control

ordinance provides for administration by board of selectmen or zoning board of adjustment, any proposal shall be reviewed by planning board prior to final consideration). When preparing, revising or amending the master plan, a planning board may review such issues as the "best design methods to prevent sprawl growth in the community and the region." RSA 674:3, I (Supp. 2007). Additionally, under RSA 674:1, V, "[t]he planning board may, from time to time, recommend to the local legislative body amendments of the zoning ordinance or zoning map or additions thereto." Finally, RSA 674:1, VI provides that "[i]n general, the planning board may be given such powers by the municipality as may be necessary to enable it to fulfill its functions, promote municipal planning, or carry out the purposes of [Title LXIV]."

With respect to the board of selectmen, its sphere of authority under Title LXIV, albeit significant, is substantially more restricted. For example, in certain towns, selectmen may have the responsibility to appoint persons to serve on the planning board, while in other towns the local legislative body elects such persons. RSA 673:2, II (Supp. 2007). One member of a board of selectmen sits on each land use planning board. *See* RSA 673:2, II (planning board); RSA 673:4 (1996) (historic district commission); RSA 673:4-a (1996) (heritage commission); RSA 673:4-b (Supp. 2007) (agricultural commission). Further, under an innovative land use control ordinance, the board of selectmen may be granted the authority to grant conditional or special use permits. *See* RSA 674:21, II. Additionally, capital improvements programs are submitted to, among others, the mayor or the board of selectmen "for consideration as part of the annual budget." RSA 674:8 (Supp. 2007).

Without attempting to identify all aspects of the planning and zoning scheme designed by the legislature under Title LXIV, we conclude that it is clear that the legislature intended for municipal land use planning and zoning to occur within the confines of that comprehensive Title, with significant authority resting with the planning board. We recognize that the occasion analysis under RSA 231:8 is an equitable one, *see Wolfeboro*, 146 N.H. at 452, and that the board of selectmen is faced with a variety of circumstances that are specific to the case before it. We conclude, however, that the legislature did not intend for a board of selectmen to use its authority to determine occasion for the layout or upgrade of a highway under RSA 231:8 as a vehicle for effectively conducting land use planning or zoning. Accordingly, we answer the second interlocutory question in the negative.

*Remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.