Merrimack
No. 2010-806

TOWN OF NEWINGTON

v.

STATE OF NEW HAMPSHIRE & a.

Argued: September 22, 2011
Opinion Issued: November 29, 2011

*Baldwin & Callen, PLLC*, of Concord (*Steven M. Whitley* on the brief, and *Jed Z. Callen* orally), for the petitioner.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*John-Mark Turner* and *Robert P. Cheney* on the brief, and *Mr. Turner* orally), for respondent Pease Development Authority.

*Michael A. Delaney*, attorney general (*K. Allen Brooks*, senior assistant attorney general, on the memorandum of law), for respondent New Hampshire Department of Environmental Services.

LYNN, J. The petitioner, the Town of Newington (Town), appeals an order of the Superior Court (*McNamara*, J.) granting the summary judgment motion of the respondents, the State of New Hampshire through the Pease Development Authority (PDA) and the New Hampshire Department of Environmental Services (DES). We affirm.

The following facts appear in the parties' joint stipulation of facts or are taken from the trial court's order. In the 1950s, the federal government established the Pease Air Force Base (Pease AFB) in Rockingham County. In 1989, the Secretary of Defense approved the recommendation of the Commission on Base Realignment and Closure to close Pease AFB. In response, the legislature enacted RSA chapter 12-G (2003 & Supp. 2010), which, among other things, created PDA to accept title to the land of the Pease AFB on the State's behalf.

Before the land was deeded to PDA, the United States Air Force engaged in a series of environmental impact analyses required by federal law. Following several iterations of environmental documents and deed restrictions, PDA accepted title to the Pease AFB land in three title transfers between 1999 and 2005.

Shortly thereafter, the Town began the process of designating prime wetlands within its borders, pursuant to RSA 482-A:15 (2001), and subsequently submitted the designation of eighteen prime wetlands to DES, six of which are located on the former Pease AFB. DES initially "approved" the Town's request, but later clarified that it "did not purport to 'approve' the legality of the Town's designation of prime wetlands located within PDA boundaries, nor would the agency have statutory authority to do so."

Several months later, as part of a proposed construction project on PDA land to expand an existing office building, an alteration of terrain permit application was filed with DES. The Town objected, asserting that it involved fill within 100 feet of wetlands that the Town had designated as "prime" and, therefore, required a wetlands permit. DES disagreed.

After the Wetlands Council dismissed its appeal for lack of jurisdiction, the Town filed a petition for declaratory and injunctive relief in superior

court. Determining that this was "actually a relatively straightforward case," the trial court concluded that PDA was not required to comply with the Town's prime wetlands designations and, therefore, granted PDA and DES's motion for summary judgment. This appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Sabinson v. Trustees of Dartmouth College*, 160 N.H. 452, 455 (2010). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

The Town first argues that the trial court erred in concluding that RSA 12-G:13 exempts PDA from complying with the Town's prime wetlands designations. PDA and DES counter that the statute removed the Town's authority to designate prime wetlands on PDA property.

The interpretation and application of statutes present questions of law, which we review *de novo. Clare v. Town of Hudson*, 160 N.H. 378, 384 (2010). We are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meaning to the words used. *Id.* "We construe statutory provisions in a manner that is consistent with the spirit and objectives of the legislation as a whole." *City of Manchester Sch. Dist. v. City of Manchester*, 150 N.H. 664, 669 (2004).

RSA 12-G:13, I, provides in pertinent part:

> [A]ny and all land use controls of the town of Newington . . . shall not apply to any of the property at Pease Air Force Base transferred, conveyed, or otherwise granted to the authority by the federal government or any agency thereof. [PDA] shall have the *exclusive* jurisdiction in adopting and establishing land use controls for the property at Pease Air Force Base transferred, conveyed, or otherwise granted to the authority by the federal government or any agency thereof.

(Emphasis added.) The issue presented here is whether designation of prime wetlands under RSA 482-A:15 is a "land use control."

Pursuant to statute, " '[l]and use controls' means all municipal ordinances and requirements or rules of [PDA] regulating the use, development, and improvement of property, including, but not limited to, zoning ordinances, subdivision regulations, site plan review regulations, and building, electric,

plumbing, and fire codes." RSA 12-G:2, XVI. The Town asserts that "the designation of prime wetlands is a state requirement, not a municipal one." We disagree.

■ "The State has delegated to municipalities authority to 'regulate and restrict' certain land uses." *Lakeside Lodge v. Town of New London*, 158 N.H. 164, 168 (2008). Under RSA 482-A:15, I, "[a]ny *municipality* . . . may undertake to designate, map and document prime wetlands lying within its boundaries." (Emphasis added.) The local legislative body must then follow the procedures for enacting municipal zoning ordinances, *see* RSA 675:2, :3 (2008), in deciding whether to adopt the prime wetlands designation. RSA 482-A:15, II. This process is devoid of input from the State. The only role the State plays is a passive one: accepting and maintaining for public access all prime wetlands designations filed with DES by municipalities. *Id.* That the designation of prime wetlands by a municipality occurs pursuant to legislative authority does not alter the local character of the statute. *See, e.g.*, RSA 31:17-a (Supp. 2010) (establishing procedure for referendum regarding the use of fluoride in public water systems); RSA 672:1, I (Supp. 2010) (underscoring that land use regulations "have been and should continue to be the responsibility of municipal government"). Similarly, the role of the State in *enforcing* the statute does not transform its municipal character.

The Town cites *Green Crow Corp. v. Town of New Ipswich*, 157 N.H. 344 (2008), as requiring that "*all* municipal land use control [must] be exercised under the authorities included in Title [LXIV — Planning and Zoning]." This case, however, is distinguishable from *Green Crow*. In *Green Crow*, we were asked, pursuant to an interlocutory appeal without ruling, *see* SUP. CT. R. 9, whether a board of selectmen could use its authority to determine occasion for the layout or upgrade of a highway under RSA 231:28 (1993) as a vehicle for effectively conducting land use planning or zoning, and we concluded that it could not. *Green Crow*, 157 N.H. at 355. Although *Green Crow* does include rather expansive language that "the legislature intended for municipal land use planning and zoning to occur within the confines of [Title LXIV]," we were specifically referring to "aspects of the planning and zoning scheme designed by the legislature under Title LXIV," a situation inapposite to the one presented here. *Id.* Contrary to the Town's contention, *Green Crow* did not hold that Title LXIV provided the *exclusive* legislative authority for local land use regulation.

■ As the trial court determined, the designation of prime wetlands is a "land use control." Thus, it cannot be applied to control development of any property owned by PDA.

The Town also argues that PDA is required by the covenants in the deeds to the former Pease AFB property to abide by the Town's prime wetlands designation. In response, PDA and DES contend that the Town lacks standing to enforce the deeds' covenants.

■ "One seeking to enforce a restriction in equity must have a standing entitling him to seek equitable relief." *Shaff v. Leyland*, 154 N.H. 495, 497 (2006) (quotation omitted). In particular, "we construe restrictive covenants as appurtenant to an interest in land, the benefit of which is personal to the covenantee and is enforceable only by the covenantee, unless a contrary intent is expressed in the language of the covenant." *Id.* at 499.

■ Only current beneficiaries are entitled to seek judicial enforcement of deed covenants, even if enforcement would be beneficial to persons or entities other than beneficiaries. RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 8.1 comment *b*, at 475 (2000). Although the Town contends that the reference in the deed to compliance with RSA chapter 482-A "was intended to create a beneficial interest in favor of the Town," it provides no authority, and we have found none, to support this contention.

■ Because the Town is not expressly named as a beneficiary in the deeds, any intent to benefit the Town by adopting the deeds' covenants must be implied. *See Gephart v. Daigneault*, 137 N.H. 166, 171 (1993) (third-party beneficiary entitled to enforce restrictive covenant in deed). The establishment of a beneficial interest by implication, however, commonly arises under particular circumstances not present in this case. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.11 comment *b*, at 154 (explaining that servitude by implication arises on the basis of use made prior to severance, by references to maps and highway boundaries in descriptions of land conveyed, by conveyance of land subject to a general plan of development, or by necessity).

Moreover, the deeds themselves explicitly provide that the United States, not the Town, is responsible for enforcement of the deeds' covenants. To insure that the United States retained the power to oversee development at the former Pease AFB, the deeds contained the following provision:

> The failure of the United States to insist in any one or more instances upon complete performance of any of the terms, covenants, conditions, reservations, or restrictions in this Deed shall not be construed as a waiver or relinquishment of the future performance of any such terms, covenants, conditions, reservations, or restrictions, and the obligations of the Grantee, its

successors and assigns, with respect to such future performance shall continue in full force and effect.

We therefore conclude that the reference in the deeds to RSA chapter 482-A, without more, does not confer standing upon the Town to challenge compliance with the deed restrictions. Accordingly, the trial court did not err in granting PDA and DES's motion for summary judgment.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.